1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WASHINGTON

**JAMES BULLOCK**,

        Plaintiff,

v.

The WASHINGTON STATE DEPARTMENT
OF ECOLOGY, STUART CLARK, KATHY
TAYLOR, DAVID T. KNIGHT, KARIN
BALDWIN, KARY PETERSON, ANDREW
KRUSE, ROBERT KOSTER, JOHN
POFFENROTH, LLYN DOREMUS, and
JASE BROOKS;

        Defendants,

No. 3:20-cv-05121-BHS

**COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY**

COMPLAINT FOR EMPLOYMENT DISCRIMINATION

COMPLAINT - Page **1 of 70**

James Bullock
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

## I.    THE PARTIES TO THIS COMPLAINT:

**A.    Plaintiff(s)**

James Bullock, 811 W 15th Avenue Apt. A, Spokane, WA, 99203, 509-280-2359


**B.    Defendant(s)**

The Washington State Department of Ecology, 300 Desmond Drive, SE, Lacey WA, 98503; PO Box 47600,

Olympia, WA 98504-7600, 360-407-6188

Stuart Clark, Air Quality Program Manager, 300 Desmond Drive, SE, Lacey WA, 98503; PO Box 47600, Olympia,

WA 98504-7600, 360-407-6880,

Kathy Taylor, Deputy Program Manager, 300 Desmond Drive, SE, Lacey WA, 98503; PO Box 47600, Olympia,

WA 98504-7600, 360-407-7115

David T. Knight, Section Manager, 4601 N. Monroe, Spokane, WA 99205-1295, 509-329-3469

Karin Baldwin, Manager, 4601 N. Monroe, Spokane, WA 99205-1295, 509-329-3452

Andrew Kruse, Environmental Engineer, 4601 N. Monroe, Spokane, WA 99205-1295, 509-329-3528

Kary Peterson, Outdoor Burn Unit Manager, 4601 N. Monroe, Spokane, WA 99205-1295, 509-329-3400

Jase Brooks, 300 Desmond Drive, SE, Lacey WA, 98503, (360) 951-9490

Llyn Doremus, 4601 N. Monroe, Spokane, WA 99205-1295, 509-329-3468

John Poffenroth, Environmental Specialist, 4601 N. Monroe, Spokane, WA 99205-1295, (509) 329-3468


**C.    The address at which I sought employment or was employed by the defendant(s) was:**

Name:                              Washington State Department of Ecology

Street Address:             4601 N. Monroe St.

City and County:           Spokane

State and Zip Code:      Washington, 99203

Telephone Number:      509-329-3400

COMPLAINT - Page **2 of 70**

## II.    BASIS FOR JURISDICTION

2.1    This action is brought for discrimination in employment pursuant to:

United States Constitutional Amendments 7, 9, and 14; Title VII of the Civil Rights Act of 1964, as amended; OSH Act 29 U.S.C. § 660 c(1); 15 U.S.C. §2651 (a); The Clean Air Act (CAA) 42 U.S.C. § 7622 et. seq.; 28 U.S.C. § 1875; tortious interference; and any other applicable rules. All involve federal questions and a state government agency as the defendant where this Court has subject matter and territorial jurisdiction, respectively.

Additionally, this complaint includes violations of relevant state and union rules: RCW 49.60 et. seq.; RCW 42.40 et. seq.; RCW 2.36.165 et. seq., and Union Collective Bargaining Agreement Articles as mentioned.

2.2    I, the Plaintiff JAMES BULLOCK, am a current resident and citizen of Washington State, residing in Spokane, Washington. At the time of my wrongful termination from employment with the Defendant THE WASHINGTON STATE DEPARTMENT OF ECOLOGY, I was a resident of Washington State residing in Spokane County.

2.2.1    I was over the age of 40 before my employment ended.

2.3    The Defendant THE WASHINGTON STATE DEPARTMENT OF ECOLOGY is a Washington State government agency with its Headquarters located in Lacey, Washington (Thurston County). The Defendant has regional offices in Spokane (Eastern Regional Office (ERO)), Union Gap (Central Regional Office (CRO)), and Bellevue Washington (Northwestern Regional Office (NWRO)). The Southwestern Regional Office (SWRO) is located at the Lacey, Washington Headquarters.

2.4    The Defendant THE WASHINGTON STATE DEPARTMENT OF ECOLOGY is funded by the US Environmental Protection Agency (EPA) and partners with the EPA Region 10 (located in Seattle, Washington) in managing and enforcing

COMPLAINT - Page **3 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

1

2

3

environmental regulations pertaining to land, air, hazardous waste, and nuclear waste in Washington State.  Also, the regional offices collect registration fees from businesses within their territorial jurisdiction.

4

5

6

7

8

2.5     All acts of THE WASHINGTON STATE DEPARTMENT OF ECOLOGY alleged in this Complaint were performed by authorized agents or employees of the agency within the scope of valid agency or employment relationships, and were performed for the benefit of the agency within the territorial boundaries of Spokane and Thurston Counties within the State of Washington.

9

10

11

12

13

14

15

16

17

18

19

2.6     Although the majority of the number of relevant violations of Federal and State laws in addition with union and agency rules as pled herein occurred or originated at the ERO in Spokane County Washington, major Federal and State regulations in addition with Union and agency rules were also violated by Defendants residing at the Ecology Headquarters in Lacey, Washington, within the County of Thurston. Ecology leadership within the Air Quality Program (AQP) located at Lacey, Washington were aware and informed of rule violations and neglected to take appropriate action(s) to comply with Federal, State, Union CBA, and agency rules. The actions or neglect of actions by Ecology leadership at The Department of Ecology Lacey, Washington headquarters directed, influenced, or supported actions taken by employees and AQ management at Ecology ERO in Spokane, Washington and its Headquarters in Lacey.

20

21

22

2.7     The defendants Stuart Clark and Kathy Taylor worked at Ecology Headquarters in Lacey, Washington and had authority over the defendants at Ecology ERO in Spokane, Washington and Lacey, Washington.

23

2.8     This court has territorial jurisdiction over Thurston County, Washington.

24

25

2.9     Defendants Stuart Clark, Kathy Taylor, and Jase Brooks were, upon information and belief, at all times relevant hereto all residents of Thurston County, Washington and

26

COMPLAINT - Page **4 of 70**

27

28

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

employees of The Washington State Department of Ecology, with their primary offices located in Thurston County.

2.10   All actions engaged in as referenced herein by Defendants Stuart Clark, Kathy Taylor, and Jase Brooks were actions taken within the scope of their employment on behalf of Defendant The Washington State Department of Ecology.

2.11   Defendants David T. Knight, Karin Baldwin, Kary Peterson, Llyn Doremus, Robert Koster, Andrew Kruse, and John Poffenroth were, upon information and belief, at all times relevant hereto all residents of Spokane County, Washington and employees of The Washington State Department of Ecology, with their primary offices located in Spokane County.

2.12   All actions engaged in as referenced herein by Defendants David Knight, Karin Baldwin, Kary Peterson, Llyn Doremus, Robert Koster, Andrew Kruse, and John Poffenroth were actions taken within the scope of their employment on behalf of Defendant The Washington State Department of Ecology.

2.13   Damages exceed the statutory minimum for this Court.

2.14   The amount in controversy-the amount the plaintiff claims the defendant owes or the amount at stake-is more than $75,000, not counting interest and costs of court.

2.15   Defendant Washington State Department of Ecology is and at all times relevant to the allegations contained herein was vicariously liable for the acts or negligence of its employees or agents.

## III.   STATEMENT OF CLAIM

3.1   The Defendant's actions took place in the State of Washington.

3.2   The discriminatory conduct of which I complain in this action includes but is not limited to: Failure to hire me for a higher grade position that I applied to, wrongful

COMPLAINT - Page **5 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

termination of my employment, failure to promote me, unequal terms and conditions of my employment, retaliation, discrimination and disparate treatment, and tortious interference.

3.3     The alleged discriminatory acts occurred between July 9th, 2018 and January 14th, 2019. I believe the defendant(s) are still committing these acts against me.

3.4     The defendants discriminated against me based on my race, color, perceived religion, and other possible protected classes in violation of federal and state law.

The facts of my case

3.5     I was originally hired by The Washington State Department of Ecology on July 9th, 2018. I was discharged from the Washington State Department of Ecology on January 14th, 2019 by Defendants Kathy Taylor, David Knight, and Karin Baldwin.

3.6     I was hired by the Washington State Department of Ecology as an Environmental Specialist 3 within the AQP. My specific position was a Registration and Compliance Assurance Specialist, where I worked at the Ecology Eastern Regional Office (ERO) in Spokane, Washington.

3.7     The initial probationary period for Environmental Specialists at Ecology was six months from the date of hire. My initial probation period was to end on January 9th, 2019 which was six months from my hire date on July 9th, 2018. Since there was no valid justification or cause for ending my employment on January 14th, 2019, I was a permanent status employee as of January 9th, 2019 where I met and exceeded requirements within my probation period. This is supported by a written agreement and valid facts about my employment performance.

3.8     I previously applied for the Air Operating Permit Management Specialist (Environmental Specialist 4) and an Air Operating Permit Compliance Specialist

COMPLAINT - Page **6 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

(Environmental Specialist 4) (in Training) positions at Ecology. I was not selected for these positions.

3.9    On or around March, 26th, 2018, I applied for an Environmental Specialist 4 position within the AQP and was not selected for the position. I interviewed for the position on April, 27th, 2018 at ERO. Gail Wright was selected for the Environmental Specialist 4 position by AQ management. Gail Wright is not part of the same protected classes which I belong.

3.10   On or around May 2018, I applied for the Environmental Specialist 3 position at Ecology.

3.11   On June 13th, 2018, at 3:00 PM, during the interview process, I was contacted by Karin Baldwin over the phone where she informed me that she could not procure references from my former employers PAML (Pathology Associates Medical Laboratories) and Jubilant HollisterStier LLC. Karin Baldwin informed me that Jubilant HollisterStier Human Resources would not provide references and suggested to Karin Baldwin to pay $26.00 dollars to obtain references from The Work Number, a third party reference checking agency owned by Equifax. Karin Baldwin requested that I submit five references instead of the required three. One of the references I submitted was my direct supervisor at PAML. Karin Baldwin did not pay to obtain references from Equifax. I was encouraged by Karin Baldwin to apply for the Environmental Specialist 3 position after being passed over for the Environmental Specialist 4 position. Karin Baldwin was the hiring manager for both positions.

3.12   On or around June of 2018, I attended an interview for the Environmental Specialist 3 position at the ERO. I was interviewed by David Knight, Karin Baldwin, John Poffenroth, Jason Cocke, Janice Batchelor, Brian Prisock, and Andrew Kruse. During the interview, David Knight handed me a document to sign prohibiting Ecology from

COMPLAINT - Page **7 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

contacting certain former managers, supervisors, or coworkers. I did not sign this document.

3.13   On my employment application, I listed PAML, Jubilant HollisterStier LLC, Tony Roma's, and Providence Health & Services. I also listed my race as African American, Caucasian, and Native American.

3.14   In 2007, The Washington State Department of Ecology was the defendant in a lawsuit based on racial discrimination of a long tenured African American employee (Davis v. State of Washington, Department of Ecology, United States District Court, District of Western Washington case number C04-5509RBL). The Washington State Department of Ecology settled this lawsuit in the amount of $750,000 with the Plaintiff, whom was African American. The plaintiff was denied a promotion, while others, not belonging to the same protected class as the plaintiff, were promoted.

3.15   The Washington State Department of Ecology AQP department at the ERO was undergoing a re-organization during my employment. David Knight, Karin Baldwin, Andrew Kruse, Jason Cocke, Janice Batchelor, Gail Wright, and Krystal Snyder were among employees whom were new within the Air Quality department. David Knight, Karin Baldwin, and Jason Cocke had previous significant experience in other departments within Ecology.

3.16   I was part of a Union upon my hire, where I was part of the Washington Federation State of Employees (WFSE). I was invited and served on the Union local 1221 Executive Board. I attended scheduled meetings both onsite and offsite.

3.17   Existing policies and procedures at The Washington State Department of Ecology prohibits unlawful discrimination in accordance with Chapter 1: Non-Discrimination which applies to all employees, represented and non-represented, within Ecology.

COMPLAINT - Page **8 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.18   Ecology policy 1-12 states in relevant part:

**The Department of Ecology is committed to maintaining a highly skilled and diverse workforce that complies with all federal and state laws.**

3.19   David Knight was the Section Manager of the Air Quality (AQ) Department at the ERO. Janice Batchelor, Karin Baldwin, and Kary Peterson directly reported to David Knight. Karin Baldwin managed the Commercial Industrial Unit where Kary Peterson managed the Outside Burn Unit within the Air Quality Department at ERO. David Knight's direct report was Kathy Taylor, Deputy Program Manager, whose office was located at the Ecology Headquarters in Lacey, Washington. Jase Brooks also directly reported to Kathy Taylor whose office was also located at Lacey Headquarters. Kathy Taylor directly reported to Stuart Clark, AQP Program Manager, whose office was also located at Ecology Headquarters in Lacey, Washington.

3.20   Karin Baldwin's direct reports included myself, Environmental Specialist 3; Gail Wright, Environmental Specialist 4; Jason Cocke, Environmental Specialist;  John Poffenroth, Environmental Specialist; Jenny Filipy, Environmental Engineer; Brian Prisock, Environmental Specialist; Robert Koster, Environmental Engineer; and Andrew Kruse, Environmental Engineer.

3.21   Kary Peterson's direct reports included Krystal Snyder, Vincent Peak, Neil Hodgson, Daniel Matsche, and Paul Rossow.

3.22   The scope of the Registration and Compliance Assurance Specialist primarily entailed independently planning, prioritizing, and conducting inspections and investigations on air pollutant sources; evaluating compliance with federal and state Air Quality regulations; providing compliance assistance; preparing and approving written

COMPLAINT - Page **9 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

documents; entering data into data systems; the organization and maintenance of facility files; and assisting or leading special projects.

3.22.1   The scope of knowledge, skills, and abilities required by an Environmental Specialist was similar to that of a Validation Specialist or Engineer of which I had approximately three years of experience and received multiple raises and promotions.

3.23   The Air Quality Investigator Manual refers to the investigator or inspector as a "Project Manager."

3.24   My credentials and training relevant to the Registration and Compliance Assurance Specialist position include but aren't limited to project management certification and training; quality management certification; lean six sigma training and certification; Information Technology Infrastructure Library certification; Food and Drug Administration (FDA) regulated pharmaceutical manufacturing, validation, and laboratory experience; and restaurant management experience. I was promoted and given raises multiple times during my employment in a restaurant and an FDA regulated pharmaceutical manufacturing facility having a matrix organizational structure.

3.25   Trainings in project management, quality, information technology infrastructure library (ITIL), and lean six sigma were recognized and offered to employees by the State of Washington.

3.26   The Department of Ecology AQP was in the process of creating a Source Management System (SMS) to manage and organize information relevant to inspecting and monitoring current and future facilities. The SMS was being created to enhance the management of facility information by increasing search and organizational efficiency, automating tasks, reducing variation in documents and

COMPLAINT - Page **10 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

tasks, increasing document security, and providing a central database for multiple users. During my employment at Ecology, I identified a lack of standardized processes and procedures in addition to deficient technology and systems within the AQP.

3.27   During my employment, I identified that the AQP did not have or had deficient processes, procedures, and/or systems to adequately perform job duties relevant to meeting consistent quality and efficiency. Multiple employees had recurring problems with retrieving information, filing documents, creating templates, and decision making which all contributed to delays.

3.28   During a meeting on December 13th, 2018, I introduced a risk priority matrix with the group to help prioritize facilities for inspection. The current system contained varied processes for prioritizing inspections. Myself, Karin Baldwin, Jason Cocke, and Gail Wright were present at this meeting.

3.29   The AQP at ERO was working on an enforcement process chart while I was an employee. There were multiple discussions about inconsistent enforcement decisions, prioritization of inspections, processes, and procedures as well as outdated technologies.

3.30   While I was an employee, the ERO AQ management and John Poffenroth were working on making changes to the Air Quality Investigator Manual which provided process and procedural guidance for AQ investigators.

3.31   The AQ department at ERO did not contain written processes and procedures for specific department operations. The procedures placed on SharePoint were general and not specific enough to provide adequate instructions for following processes within the AQ department at ERO. For example, the travel coordination process did not include specific written or visual routing and document procedures to consistently

COMPLAINT - Page **11 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

perform tasks to minimize variation. Also, employees created documents using varied conventions while placing them in various locations.

3.32   User stories were submitted by employees to Gail Wright for the purpose of developing the SMS and to resolve issues and problems with current Air Quality systems such as document access and security for making changes, retrieval and storage of information, creation of inspection checklists and reports, tracking of facility registration and payment of fees, and providing an interface for facilities to enter data. The AQP was utilizing SharePoint and Outlook as well as network and individual drives to store and retrieve electronic information which consisted of unsecure systems and varied processes. I identified and communicated to management and coworkers about the deficiencies and lack of standardized processes and procedures, however, AQ management neglected to allocate resources or take corrective or preventive actions to fix persisting problems within the department.

3.33   Upon hire, Ecology required all of its employees to complete required trainings within specified timelines. The AQP management did not consistently apply this rule to all of its employees.

3.34   David Knight approved all trainings and travel within the AQP at ERO. All travel forms were processed by Janice Batchelor, AQ secretary or delegated to Kim Alexander.

3.35   The AQP claimed that my employment ended due to a probation separation according to Union Collective Bargaining Agreement (CBA) Article 4.6 (2). The AQP also claimed that I did not meet performance standards for meeting my probation requirements which was not valid. The Washington State Department of Ecology sent a statement to the Washington State Employment Security Department that I did not meet the quota of inspections and that I could not perform my job tasks. The AQP

COMPLAINT - Page **12 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

exploited deficient rules, processes, and procedures to illegally discriminate against me due to the protected classes which I belong and the protected actions that I took.

According to WFSE Union CBA Article 4.6 (1), (2), it states in relevant part:

**1. Every part-time and full-time employee, following his or her initial appointment to a permanent position, will serve a probationary period of six (6) consecutive months, except for employees in any job classification listed in Appendix S, Job Classifications – Twelve Month Probationary Period, will serve a twelve (12) month probationary period. Agencies may extend the probationary period for an individual employee as long as the extension does not cause the total period to exceed twelve (12) months. Employees will be provided with a written explanation for the extension. If the extension is based on performance issues, the employee will receive a performance improvement plan.**

**2. The Employer may separate a probationary employee at any time during the probationary period. The Employer will provide the employee five (5) working days' written notice prior to the effective date of the separation. However, if the Employer fails to provide five (5) working days' notice, the separation will stand and the employee will be entitled to payment of salary for up to five (5) working days, which the employee would have worked had notice been given. Under no circumstances will notice deficiencies or performance improvement plan issues result in an employee gaining permanent status. The separation of a probationary employee will not be subject to the grievance procedure in Article 29, Grievance Procedure.**

3.36   The Ecology AQ management exploited CBA rules and others to end my employment without just cause or valid justification and terminated my employment based on retaliatory and discriminatory acts which was illegal. Ecology AQP management's decisions were supported by invalid and non-objective information, a neglect and consideration of all relevant facts, a failure to consistently apply the same rules with all of its employees, retaliation for informing management about rule violations, and falsely extending my probation which are all linked to discrimination. Due to meeting all of my requirements within my six (6) month probationary period, I was no longer on probation and achieved permanent status.

COMPLAINT - Page **13 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.37    Within Ecology policy 9-01: Resolving Employee Grievances, Ecology AQ management exploited rule 10 within this policy which states in relevant part:

**"Employees are encouraged to resolve issues among themselves."**

I was encouraged by multiple union members not to file a grievance against management and I provided AQ management multiple opportunities to resolve the matter, collaboratively. As a result, Ecology Human Resources, union representatives, and management neglected to take appropriate action according to union rules, Ecology policies, and state and federal laws.

3.38    The AQP used deficient processes, procedures, systems, and training to discriminate against me and those belonging to similar protected class(es). Those not belonging to protected classes which I belong were approved trainings which I wasn't approved for, given more favorable performance reviews, were not disciplined as I was, and were treated more favorably than I was. I was given department training with varied content, denied training where others were approved the same training, not given credit for work I had completed successfully, and I was being held to a higher standard than others not belonging to the same protected classes which I belong.

3.39    My office cubicle was located directly across from Andrew Kruse who was at the time, an Environmental Engineer. My cubicle was located in direct line of sight between three Environmental Engineers, Jenny Filipy, Robert Koster, and Andrew Kruse.

3.40    Krystal Snyder sat directly across from Vincent Peak's cubicle.

3.41    During travel, I had to report to both David Knight and Karin Baldwin, where I believe that others not part of my protected class did not.

3.42    Andrew Kruse mentioned that Maia Bellon, the Ecology Director, interviewed him.

COMPLAINT - Page **14 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.43    Karin Baldwin gave Andrew Kruse a promotion around the time I made complaints about him.

3.44    Kim Alexander, the secretary to Grant Pfeifer, scheduled meetings on Outlook involving myself which created schedule conflicts. Kim Alexander scheduled a meeting with Grant Pfeifer on or around August 2018 at the same time I was scheduled to go out in the field with John Poffenroth. Also, Kim Alexander scheduled a safety meeting on the same day I had Asbestos training. I volunteered to take Jenny Filipy's place during the safety meetings.

3.45    I nominated two Ecology employees for employee recognition. Alexandra Bergh was one employee who received an award. During a meeting with Grant Pfeifer in the large Air Quality conference room and other Ecology new hires on or around December 2019, Grant Pfeifer displayed slides of Ecology staff. When he came to Alexandra Bergh, the slides did not show Alexandra Bergh's photo. Alexandra Bergh was the only employee who did not have a photo displayed in the presentation slide despite having a photo on Ecology's Rogues Gallery on SharePoint. This meeting took place after I copied Grant Pfeifer in an email in November, 2018, which stated that I demand discrimination to stop against me immediately. I believe this action was used to retaliate and to indirectly discriminate against me by creating isolation and to deter others from forming positive employee relationships with me.

3.46    On or around July 2018, Karin Baldwin came over to my cubicle and said to me that "they don't want to listen to a couple of white honkeys." Karin Baldwin was referring to "they" as her two adopted African American sons. Karin Baldwin also announced within the office that one of her adopted sons ran away from their home, had to attend court, and is in a Juvenile Detention center. I believe that Karin Baldwin used the

COMPLAINT - Page **15 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

adoption of African American children to cover up her behavior given the facts and events which I experienced while under her direct supervision.

3.47   On July 27th, 2018, I submitted a request to Karin Baldwin to attend an environmental investigation training in San Diego, California. Karin Baldwin denied my approval for training in San Diego and approved Gail Wright this same training. In September of 2018, Gail Wright mentioned to everyone in the office that her and her boyfriend Nick, who isn't an Ecology employee, could see themselves living in San Diego. Given the information provided, it is highly likely that Gail Wright traveled with a non-Ecology employee "Nick" in an Ecology rented vehicle which was not allowed according to Karin Baldwin. On December 10th, 2018, Karin Baldwin sent me an email reminding me that the rental car is intended for business purposes only and only Ecology employees are permitted within the rental car. This email was not sent out to the entire group. Gail Wright does not belong to the same protected class(es) which I belong. This is an example of inconsistent application of rules and disparate treatment used to discriminate.

3.48   On July 30th, 2018, I traveled to Lacey, Washington Ecology Headquarters to attend the Environmental Negotiations class which lasted from July 31st, 2018 to August 2nd, 2018. I substituted for Jason "Jake" Cocke who dropped out of the Environmental Negotiations class. I drove to the training in an electric vehicle (a Chevy Bolt). During the trip, I collected data and sent an email with an attached report to an administrative staff member Chris Madunich on August 9th, 2018. No non-administrative employee at Ecology had completed this task before where I was the first non-administrative employee to accomplish this task. I was not given recognition for this accomplishment by the AQ management.

COMPLAINT - Page **16 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.49   On July 31st, through August 2nd, 2018, during the Environmental Negotiations class, only one group could not come to an agreement on a class exercise given by the instructor, Jim Nelson. An African American female Ecology employee and member of this group made a comment, during open discussion, about her team members not wanting to work with her. I believe Shawn Nolph was a member of this group. Shawn Nolph does not belong to the same protected classes which I belong. As I was being terminated in January of 2019, David Knight said to me that the department was looking to bring in a senior inspector and didn't need a process engineer. I was also approached by Karin Baldwin about possibly transferring to CRO in Union Gap, WA where Shawn Nolph worked.

3.50   On August 13th, 2018, Karin Baldwin asks me to reschedule the Diversity and Sexual Harassment training in order to take the ICIS training in Seattle, Washington. Karin Baldwin tells me at my cubicle (with Andrew Kruse and Jenny Filipy present) that I can't take the Chevy Bolt (an electric car). Karin Baldwin also sent me an email wanting me to take the Ethics Bowl class on April 9th, 2019 instead of in October 2018. She stated that it was a waste of resources.

3.51   On August 14th, 2018, at 8:24 AM, I sent an email to John Poffenroth asking the question, "What database stores the permits and where is it located?"

3.52   On August 14th, 2018, at 3:17 PM, I submitted additional trainings to Karin Baldwin after her request around October 10th, 2018 which was around the time of the Ethics Bowl training in Lacey, Washington. The trainings that I requested were WA State Steps to Becoming a Supervisor, WA State Adult Learning Styles, and WA State Getting Things Done. After finding additional trainings, I was not approved Ethics Bowl training by Karin Baldwin.

COMPLAINT - Page **17 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.53   Janice Batchelor was later approved Ethics Bowl training in Lacey, Washington by David Knight on or around August 27th, 2018. Janice Batchelor does not belong to the same protected classes which I belong.

3.54   On August 14th, 2018, at 7:30 AM, John Poffenroth and Andrew Kruse disparaged me in front of others about not asking questions.

3.55   Although Krystal Snyder may not have been approved Ethics Bowl training in the 2018 calendar year, it is highly likely due to the AQ management's pattern of behavior that they intentionally delayed her training to cause confusion and to distort the pattern of discrimination since Krystal Snyder isn't part of the same protected class(es) which I belong and was a new hire. However, Krystal Snyder's probation period was not extended as my probation period was. Also, Vincent Peak, another African American employee new hire, did not attend Ethics Bowl training and was part of the same protected classes which I belong. The delay of ethics training was a requirement for performing essential job duties where AQ management used unethical practices to discriminate and delay employee development.

3.56   On August 15th, 2018, at 1:30 PM, Robert Koster said out loud that there was an "Indian" drinking outside of the building. I believe this comment was made indirectly to create a hostile work environment for me. This comment is linked to a protected class which I belong.

3.57   On August 17th, 2018, at 8:00 AM, Andrew Kruse said to another employee that I gave a "bullshit answer" regarding to placing the new hire clock on the floor below my desk. Ecology employees used the passing of a broken clock to selectively create a negative environment with new hire employees and to create interruptions. The same clock was given to Vincent Peak by AQ management after I made the recommendation to Karin Baldwin not to give it to him. I experienced constant

COMPLAINT - Page **18 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

interruptions and believe they were intentional to create delays of my work and provoke a hostile work environment. AQ management attempted to have me give the clock to Vincent Peak where I declined to do so.

3.58    On August 17th, 2018, at 10:30 AM, there was a meeting in the small Air Quality conference room. Meeting attendees were myself, Jenny Filipy, Gail Wright, Jason Cocke, and Karin Baldwin.

    3.58.1    Karin Baldwin displayed behavior of not being my advocate by not supporting my side in an objective manner.

    3.58.2    John Poffenroth said in the meeting that he likes to be asked questions. He also said that he will not give out information unless he is asked a question during training. If he isn't asked a question, he said that he "doesn't care."

    3.58.3    Karin Baldwin also announced that I would be backing up Jason Cocke and performing minor source inspections. John Poffenroth said that he wasn't aware of this.

    3.58.4    John Poffenroth also said that the inspector doesn't have to communicate with the consultant and only the facility. I listed being a consultant on my resume when applying for both AQ positions and believe this was targeted toward me in a negative way to create a hostile work environment.

3.59    On or around August 2018, John Poffenroth tells Janice Batchelor to drop off the letter from a chemical facility in Moses Lake, Washington on my desk. Janice tells John Poffenroth, "Oh, so he can come to you to ask questions?" I believe this comment was made by Janice Batchelor to inform John Poffenroth that he was wrong in the way he was treating me.

3.60    Repeated negative comments were made by Ecology employees concerning professional athletes containing the same protected classes which I belong. Both

COMPLAINT - Page **19 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

Robert Koster and Andrew Kruse repeatedly made negative comments about Colin Kaepernick. Andrew Kruse made multiple negative comments about Patrick Mahomes as he said that he looks like a "kid." Given the negative pattern of behavior exhibited, the use of the word "kid" was used in a disparaging context. Both Colin Kaepernick and Patrick Mahomes are of African American and Caucasian descent which are the same protected classes which I belong. Also, there are negative perceptions and bias by society concerning religion, race, and politics linked to Colin Kaepernick as shown through previous, recent, and ongoing social media, news, and political events. These comments were made indirectly towards me to create a hostile work environment and to discriminate which violates Federal and State laws, in addition to, Union and agency rules.

3.60.1   On August 20th, 2018, at 3:00 PM, Robert Koster negatively criticizes the Seattle Seahawks and Colin Kaepernick.

3.60.2   On August 27th, 2018, at 7:34 AM, Robert Koster makes derogatory comments about Colin Kaepernick to Andrew Kruse.

3.60.3   On August 27th, 2018, at 11:00 AM, Robert Koster makes derogatory comments about Colin Kaepernick to Andrew Kruse, again.

3.61   On August 20th, 2018, at 8:00 AM, John Poffenroth leaves the office without taking me to shadow an inspection with him in Warden, Washington.

3.62   On August 21st, 2018, at 11:00 AM, I had a meeting with Karin Baldwin in her office regarding the requirements I needed to meet to satisfy my probation period.

3.62.1   I sent an email to Karin Baldwin with attached meeting minutes defining the agreed probation requirements.

COMPLAINT - Page **20 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.62.2    Karin and I approved that I would target to complete six inspections by December 31st, 2018 (this was not firm); however, she changed and extended the deadline to January 9th, 2019 per her email on August 29th, 2018.

3.62.3    Karin also requested that I cancel the Ethics Bowl and leadership trainings for October 2018.

3.62.4    Karin requested that I send her a project work plan sheet once per month.

3.62.5    Karin also said that Robert Koster asks her questions.

3.62.6    Karin Baldwin also made remarks during individual meetings with her that Gail Wright was "ambitious" after I had submitted requests for leadership trainings. I believe the comment made by Karin Baldwin about Gail Wright being ambitious and Robert Koster asking her questions was intended to create a hostile work environment for me and division amongst other AQ coworkers in the office.

3.63    On August 22nd, 2018, at 8:13 AM, I sent John Poffenroth an email asking the question, "What is an SM80?"

3.64    On August 22nd, 2018, at 9:48 AM, I sent John Poffenroth an email asking what do I need to do with the report I received from a facility?

3.65    On August 22nd, 2018, at 9:54 AM, Karin Baldwin states that the meeting minutes "looks great." Karin also instructs me to cancel the training requests for the leadership class and Ethics Bowl training at Headquarters.

3.66    On August 22nd, 2018, at 11:45 AM, I sent an email to John Poffenroth about a suggested strategy for my inspection training.

3.67    On August 23rd, 2018, I and Karin Baldwin signed a training plan document which contained a list of trainings to be completed during my first six months of employment. All of the trainings on the list were completed before my employment

COMPLAINT - Page **21 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

ended with exception to SharePoint and Ethics Bowl training. I had submitted SharePoint and Ethics Bowl training requests to Karin Baldwin where she rejected approval and told me that I can take them at a later time. This created a delay in my training and development, in addition to learning systems. Also, this action taken by AQ management contributed to impeding the ability of employees to apply ethical standards in the work environment at Ecology.

3.68   Ethics Bowl training is a required training at Ecology where all new hires were to complete it within six months from the date of hire. Not completing required trainings could negatively impact achieving permanent status.

3.69   On August 23rd, 2018, at 10:00 AM, an inspector meeting was called by Karin Baldwin and held. Myself, Gail Wright, and Karin Baldwin attended the meeting. The discussion included issues with permit formatting causing human error, the creation of inspection check sheets, the creation of electronic versus hard document copies, varied document storage processes, a lack of transparency of processes and procedures, concern of inspectors making compliance determinations, an individual site safety plan for sites containing hazardous chemicals, and the suggestion for inspectors to take 40 Hour Hazwoper training.

3.69.1   I informed the group that each permit requirement was not separated by a line which could create human errors where the requirement may be inadvertently missed by inspectors. I suggested formatting the permit requirements where each requirement was distinguished by having its own line. This recommendation was not implemented by AQ management.

3.69.2   There was no universal check sheet template available for each type of facility. This created planning delays as there was no standard for creating check sheets. Each inspector created their own check sheets and reports which

COMPLAINT - Page **22 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

also created variation. The SMS was mentioned as being able to resolve the
check sheet variation issue. The group decided that it was best that everyone
create their own templates for check sheets.

3.69.3   There were no specific and standardized written processes relevant to the
creation and organization of electronic and hard copy documents. This created
variation with the organization and storage of documents. This variation
created planning delays in finding relevant information for facility
inspections.

3.69.4   I informed the group about the lack of transparent processes and procedures
within the AQ department. I suggested creating visual process flow maps and
written procedures to show greater transparency. The AQ department
operations and training at ERO relied heavily on asking questions which
created variation in training and outputs of processes. The AQ management
did not support the recommendation and neglected to make necessary
corrective or preventive actions.

3.69.5   Karin Baldwin and AQP management supported the responsibility of
inspectors making compliance determinations on behalf of Ecology. The
inspectors within the department expressed concerns where it was mentioned
on several occasions that inspectors did not have the authority to make
compliance determinations unless they were given clear written permission by
someone whom is authorized to grant such authority. Within the Air Quality
Investigator Manual, it states that inspectors can determine violation of rules;
however, according to page 108, the manual states in relevant part:

**"Rarely should the investigator also be the one who ultimately determines
if there is a penalty."**

COMPLAINT - Page **23 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

The AQP management never provided clear formal written authority to its inspectors to make ultimate compliance determinations on the behalf of Ecology. Karin Baldwin repeatedly wanted inspectors to use the language of, "I determined" instead of "we" or "The AQP" within inspection reports. Karin Baldwin also requested that all reports be written in Plain Talk language which created conflicts with permit and regulatory language. These requested changes by Karin Baldwin created delays of auto body shop reports that I submitted for review in November 2018 and ultimately had a negative impact on my performance.

3.69.6  I informed the AQ group that within the Air Quality Investigator Manual, it states that inspectors are required to have an individual site safety plan present when inspecting facilities containing hazardous chemicals. None of the inspectors brought an individual site safety plan for sites containing hazards. AQ management neglected to enforce this rule.

3.69.7  Due to inspector safety and health risks when going out into the field, I suggested to take the 40 Hour Hazwoper training. Karin Baldwin responded by rejecting requested 40 Hour Hazwoper training, casting blame on limited department budgets, and providing advice of relying on the businesses to keep inspectors safe from hazards.  Karin Baldwin later approved 40 Hour Hazwoper training through the Learning Management System (LMS) and then blamed me for having a communication problem with her for scheduling the training in December 2018 rather than March 2019.

3.70    On August 27th, 2018, Janice Batchelor said that she was driving to Lacey to train for a couple of hours.

COMPLAINT - Page **24 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.71   On August 28th, 2018, at 7:15 AM, Andrew Kruse asked me if I'm going to take out the Chevy Bolt for my training in Seattle after Karin Baldwin announced to me at my cubicle previously, that she didn't want me to take the Chevy Bolt. I believe this comment was malicious and was intended to create a hostile work environment for me since Andrew Kruse heard Karin Baldwin tell me that I couldn't take the Chevy Bolt.

3.72   On August 28th, 2018, at 2:15 PM, Robert Koster made a comment about "Fat Albert", an African American cartoon character, and a comment about it being an "Indian Summer" outside. This comment was made while the city of Spokane was experiencing heavy Smoke outside from local fires. The comment was negative and derogatory due to being linked with the wild fires and heavy smoke outside. On my employment application, I recorded that I am African American, Caucasian, and Native American. These negative comments were linked to protected classes which I belong and were indirectly made towards me to create a hostile work environment.

3.73   On August 29th, 2018, at 10:51 AM, Karin Baldwin sent me an email stating that she denied the Advanced Investigator training course because I had to take the two day course first. During the Advanced Investigator course I attended on January 7th, 2019, Cheryl Middleton, the instructor for both investigator courses, said to the class that you don't have to take the two day course before the advanced investigator course. I believe Karin Baldwin intentionally denied me training to create delays in my training, undermine my performance, and interfere with completing my requirements to satisfy my probation period.

3.74   On August 29th, 2018, at 10:54 AM, Karin Baldwin sent me an email denying approval of 40 Hazwoper training and she stated that she wanted me to concentrate on my training plan courses and getting six inspections completed by January 9th, 2019.

COMPLAINT - Page **25 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.75    On August 30th, 2018, at 7:51 AM, I sent Karin Baldwin an email regarding my concerns with protecting inspector's safety and health when going out and performing inspections. I brought up the importance of having 40 Hour Hazwoper training to help with identifying hazards. Karin Baldwin did not approve of this training until December 2018 and later disciplined me for requesting training in December 2018. I believe that Karin Baldwin falsely blamed me for having a verbal communication problem in retaliation for addressing protected concerns about inspector safety and health. By delaying 40 Hour Hazwoper training, the inspectors were at risk for suffering health and safety related injury. The lack of training could also deter inspectors from performing thorough inspections and consequently, detecting high priority violations which places public health at negative risk.

3.76    On August 30th, 2018, at 9:58 AM, Janice Batchelor travels to Lacey for training. She said on August 27th, 2018, that she is driving there to train for a couple of hours.

3.77    On or around August or September 2018, I traveled to a facility in Kettle Falls, Washington with Jason Cocke and Krystal Snyder. During the visit, Jason Cocke and Krystal Snyder drove the Ecology vehicle to Lake Roosevelt Houseboat Vacations in Kettle Falls, Washington. Shortly after the facility visit, I contacted Karin Baldwin and informed her of events which took place at the facility which made me uncomfortable. I later requested to withdraw from inspecting the facility due to the most recent events I had experienced and having a possible conflict of interest. I made my request with Karin Baldwin in her office.

3.78    On September 4th, 2018, at 10:08 AM, Andrew Kruse comes over to my cubicle and talks about Earl Thomas of the Seattle Seahawks and then starts to talk about Colin Kaepernick and Nike's new commercial in a negative way. Robert Koster joins in. I

COMPLAINT - Page **26 of 70**

believe these comments were made indirectly to create a hostile work environment for me.

3.79   On September 4th, 2018, at 11:09 AM, I sent out a reminder of Ecology policies to the entire Air Quality group at ERO after another inappropriate comment was made about Colin Kaepernick by Andrew Kruse. Both Robert Koster and Andrew Kruse made repeated negative comments about individuals belonging to protected classes which I belong. These were malicious attempts to interfere with my employment agreement at Ecology.

3.80   On September 4th, 2018, at 11:30 AM, I reported Andrew Kruse's behavior to Karin Baldwin in her office.

3.81   On September 6th, 2018, I set up a meeting to talk with Andrew Kruse about his behavior. At the meeting, I demanded that he stop with the discrimination. I told Andrew Kruse that I don't talk about race, religion, and politics at work and the topics are inappropriate which do not support Ecology policies. During our conversation, Andrew Kruse mentioned that he knew Keith Baer at ALK Abello who also worked at Jubilant HollisterStier LLC while I was an employee. I also said that I knew Keith Baer from Jubilant HollisterStier LLC. Andrew Kruse kept saying during the meeting that ALK had a "toxic" environment. I believe these comments are linked to tortious interference and were made to cause mental anguish and anxiety so I would quit.

3.82   The only Ecology procedure relating to employee harassment is defined in Ecology policy Chapter 1: Non-Discrimination, Executive Procedure 1-13-01, Filing and Responding to Sexual Harassment Complaints. I followed the employee procedure concerning the complaint I made with Andrew Kruse and no action was communicated or taken by Ecology HR or management.

COMPLAINT - Page **27 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.83   As of July 2019, my former supervisor from Jubilant HollisterStier is a current

employee at ALK Abello in Post Falls, Idaho. My supervisor worked at Jubilant

HollisterSter LLC within the Validation department.

3.84   My direct supervisor and management illegally terminated my employment from

Jubilant HollisterStier LLC during an EEOC mediation on December 11th, 2012.

3.85   I filed two EEOC discrimination charges against Jubilant HollisterStier LLC, one in

2011, and another in 2012. At these times, I was working within the Validation

department. It is highly likely that Jubilant HollisterStier or someone having a

connection with them interfered with my employment relationship at Ecology and

other organizations.

3.86   Within EEOC federal law 42 U.S.C § 704 et. seq. states in relevant part:

**It shall be an unlawful employment practice for an employer -**
**(1) to fail or refuse to hire or to discharge any individual, or otherwise to**
**discriminate against any individual with respect to his compensation, terms,**
**conditions, or privileges of employment, because of such individual's race, color,**
**religion, sex, or national origin; or**
**(2) to limit, segregate, or classify his employees or applicants for employment in**
**any way which would deprive or tend to deprive any individual of employment**
**opportunities or otherwise adversely affect his status as an employee, because of**
**such individual's race, color, religion, sex, or national origin.**

**(a) Discrimination for making charges, testifying, assisting, or participating in**
**enforcement proceedings**
**It shall be an unlawful employment practice for an employer to discriminate**
**against any of his employees or applicants for employment, for an employment**
**agency, or joint labor--management committee controlling apprenticeship or**
**other training or retraining, including on—the-job training programs, to**
**discriminate against any individual, or for a labor organization to discriminate**
**against any member thereof or applicant for membership, because he has**
**opposed any practice made an unlawful employment practice by this**
**subchapter, or because he has made a charge, testified, assisted, or participated**
**in any manner in an investigation, proceeding, or hearing under this subchapter.**

3.87   There exists a link of elements related to tortious interference and continuing

discrimination between my former employers, the comments made by Andrew Kruse,

COMPLAINT - Page **28 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

the interview for the Environmental Specialist 3 position, and the discrimination which took place at Ecology.

3.87.1    Andrew Kruse, those I interviewed with, and AQ management all knew about my previous employers. Andrew Kruse repeatedly brought my previous employers up in conversations. He was also on the interview panel for jobs which I applied for at Ecology. Andrew Kruse made repeated derogatory comments to me and others belonging to the same protected classes which I belong in attempt to create a hostile work environment for me and interfere with obtaining my probationary requirements.

3.87.2    I did not sign a form prohibiting Ecology from contacting former managers/supervisors or coworkers.

3.87.3    I filed previous charges of discrimination against Jubilant HollisterStier LLC regarding to illegal discrimination and retaliation for whistleblowing where Jubilant HollisterStier management illegally terminated my employment during an EEOC mediation. It is illegal to retaliate for filing a charge of discrimination.

3.87.4    Keith Baer worked at Jubilant HollisterStier LLC in Spokane, Washington and ALK Abello in Post Falls, Idaho and likely knew members of the Validation management as they were all employees at Jubilant HollisterStier during the same timeframe. I was also an employee at Jubilant during the same timeframe. There are other employees now working at ALK Abello which I also worked with at Jubilant HollisterStier LLC.

3.87.5    I experienced behavior from Ecology employees which contributed to delays linked to interfering with meeting my original probation agreement.

COMPLAINT - Page **29 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.87.6    I was discharged for invalid reasons and after notifying Ecology about rule violations or perceived violations which are protected actions.

3.88    On September 10th, 2018, Andrew Kruse made a comment to me about my meeting with Brian Prisock. Andrew Kruse asked me if the meeting seemed too long. I believe this comment was made by Andrew Kruse to get me to say something negative about Brian Prisock and to provoke division and a hostile work environment.

3.89    On September 11th, 2018, at 9:00 AM, I had a meeting in Karin Baldwin's office. I discussed Andrew Kruse's behavior with her and that I told him to stop with the discrimination. Karin Baldwin responded by instructing me to not send out policies over email. She also instructed me to write a report for a recent gas terminal inspection where myself and John Poffenroth visited on around August 2018.

3.90    On or around September 18th, 2018, I sent Karin Baldwin a draft inspection report for a gas terminal facility that was recently inspected by myself and John Poffenroth. Karin Baldwin sent me an email stating that I did a good job writing the report. The inspection report was approved on September 26th, 2018 which was less than 10 calendar days from submitting the initial draft. I also used a previous template written by John Poffenroth for this facility. Karin Baldwin did not give me full credit for conducting this inspection.

3.91    On September 19th, 2018, at 9:25 AM, John Poffenroth sent me an email regarding the recent gas terminal inspection. He stated, "This is your facility, take full credit for the work you do!" AQ management did not give me credit for inspecting this facility during a performance evaluation in December 2018.

3.92    On September 19th, 2018, at 1:11, PM, John Poffenroth gives me two printed emails I sent to the printer and was looking at them.

COMPLAINT - Page **30 of 70**

James Bullock
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.93   On September 20th, 2018, at 11:15 AM, David Knight said to Robert Koster, "You don't want to be the weakest link in the group." I believe this comment was directed toward me to create a hostile work environment.

3.94   On September 23rd, 2018, I volunteered for the Lisa Brown for Congress campaign. Lisa Brown is affiliated with the Democratic Party. In conversations with employees at Ecology, I believe that Ecology AQ management were affiliated with the Republican party.

3.95   I believe another Ecology employee named Lisa Brown worked under Grant Pfeifer and was leaving Ecology on or around November or December 2018. I believe Grant Pfeifer's employment ended on or around December 2018 or early 2019.

3.96   On September 24th, 2018, at 9:42 AM, Kary Peterson tells Andrew Kruse, "Good Talk." I believe this comment was repeatedly made out of retaliation for having a discussion with Andrew Kruse in September 2018 and to create a hostile work environment for me.

3.97   On September 25th, 2018, I told Gail Wright during Smoke School training in Coeur D' Alene, Idaho that I was a little tired during the class. Also, Gail Wright drove to a crafts store and soap shop in Coeur D' Alene, Idaho in a state vehicle.

3.98   On September 26th, 2018, at 9:50 AM, Janice Batchelor sent me an email informing me that an inspection report was approved. This was an inspection of a gasoline terminal.

3.99   On September 26th, 2018, David Knight comes over to my cubicle and asks me if I was tired during the Smoke training class. This is evidence that I was under increased surveillance by management, harassed, and treated differently.

3.100   On September 26th, 2018, Karin Baldwin asks the group via email if anyone had contact with a legislator or their staff in August or September. I responded yes;

COMPLAINT - Page **31 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

however, it was in a volunteer capacity. This was only communicated to Karin Baldwin. I believe this served as an additional motive to discriminate and end my employment.

3.101   On or around September 2018, Kary Peterson of the AQ management at ERO, hired Vincent Peak. Vincent Peak is an African American male whom was in a relationship with a Caucasian female. During Vincent Peak's employment at ERO, he and his female partner had a child whom is of African American and Caucasian descent. The AQ management knew about the races of Vincent Peak's significant other and baby because Vincent Peak sent an email with a picture of his family to the ERO Air group. Vincent Peak and his family are linked to the same protected classes which I belong. Vincent Peak was hired by Kary Peterson and reported to him.

3.102   On October 1st, 2018, at 9:00 AM, I asked Karin Baldwin about taking a Chevy Bolt to Olympia for training. Karin said she doesn't want me to take the Bolt over.

3.103   On October 1st, 2018, Jason Cocke made a comment to Gail Wright and Brian Prisock that he is embarrassed to say he's from Washington State when he goes to Texas. Jason mentioned political parties and being in the wrong territory. I believe this comment was made to create a hostile work environment for me. The State of Texas has a Republican majority government while Washington State has a Democratic majority.

3.104   Discrimination based on political affiliation violates the Union CBA.

3.105   On October 3rd and 4th, 2018, I attended Investigator Core training at the Department of Enterprise Services (DES) in Olympia with Vincent Peak and Krystal Snyder. I believe Vincent Peak rented a car and brought his significant other and newborn baby with him to the training. Gail Wright also brought a non-Ecology person in an Ecology rented vehicle during her training at San Diego, California in September

COMPLAINT - Page **32 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

1  2018. Gail Wright does not belong to the same protected classes which I or Vincent

2  Peak belong.

3.106  On October 8th, 2018, David Knight sends an email to the ERO Air group with an
attached meeting agenda for the leadership meeting on October 18th, 2018 at ERO.
David Knight listed Daniel Matsche, Krystal Snyder, Vincent Peak, myself, and
Andrew Kruse as the new hires. Andrew Kruse was hired approximately one year
from this date and was still considered a new hire by management. I believe that the
AQ management instructed or encouraged Andrew Kruse, Krystal Snyder, and Daniel
Matsche to monitor me and Vincent Peak. Daniel Matsche did not participate during
the New Hire Presentation. Andrew Kruse, Krystal Snyder, and Daniel Matsche do
not belong to the same protected classes as myself and Vincent Peak.

3.107  On October 9th, 2018, at 8:30 AM, Andrew Kruse made a comment that he caught the
allotted time for the New Hire Presentation after I already informed the group. I
believe this comment was malicious and was intended to create a hostile work
environment for me.

3.108  On October 9th, 2018, at 3:30 PM, David Knight came over to my cubicle at ERO and
says to me that he told Krystal Snyder to tell me to talk to Kathy Taylor after her.
After Krystal Snyder finishes talking to Kathy Taylor, she tells me that "I'm up." As I
walked towards the large conference room, Andrew Kruse walks into the conference
room, talks to Kathy Taylor already sitting in the conference room, and closes the
door. Andrew Kruse comes over to my cubicle after talking to Kathy Taylor and tells
me "I'm up." During my conversation with Kathy Taylor, she asks me about any
problems I'm having with Karin Baldwin and she gives me her business card and tells
me to contact her if there are any problems. I addressed concerns with diversity and

COMPLAINT - Page **33 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

inclusion of all employees in this conversation. David Knight interrupts my meeting with Kathy Taylor and reminds her of her flight at about 4:00 PM.

3.109   On October 12th, 2018, at 11:30 AM, Kim Alexander comes into the office and said that she cancelled Jason Cocke's travel plans to attend training in Boise, Idaho. Jason Cocke missed a number of trainings or left early. I don't believe that Jason Cocke was given a negative performance review as I was. Jason Cocke does not belong to the same protected class as I belong.

3.110   On October 15th, 2018, at 3:28 PM, John Poffenroth says to Janice Batchelor that he had a teacher that would put up the wrong equation to tell if students were paying attention or not. This comment gave me concerns about asking verbal questions.

3.111   On October 16th, 2018, at 10:32 AM, I sent a revision of the New Hire Presentation slides to the New Hire group and AQ management via email.

3.112   On October 16th, 2018 at 11:50 AM, David Knight talks to Karin Baldwin about meeting with her at 2:30 PM. I believe this was a discussion about the new hire presentation.

3.113   On October 16th, 2018, at 3:02 PM, Karin Baldwin sent me an email stating it would be fine if I waited until February or March 2019 to attend the required Public Disclosure and Records Management training at ERO and carpool over with Brian Prisock and Jason Cocke for EPA ICIS training in Seattle. I believe this was an attempt to delay my training and development, put me in jeopardy of not completing my training requirements, and put me in jeopardy of not meeting my probationary requirements. This is another example of interference.

3.114   Public Disclosure and Records Management training is a required training at Ecology where there was a six month timeline to complete it from the date of hire.

COMPLAINT - Page **34 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.115   On October 17th, 2018, at ~7:00 AM, John Poffenroth was sitting in his truck outside of the Ecology building. He sees me walking toward the building and says "You're walking to work?" as he is getting out of his truck. I believe this event was in retaliation for the content contained within my slides for the new hire presentation.

3.116   On October 17th, 2018, at 7:44 AM, I received an email from David Knight requesting me to shorten my new hire presentation slides. David Knight requested that I work within the new hire group. On David Knight's meeting agenda for the October leadership meeting at ERO, he allotted 60 minutes for the New Hire Presentation. David Knight did not shorten Andrew Kruse's presentation after he arrived late during the leadership meetings. David Knight moved Andrew Kruse's presentation later in the day where it wasn't shortened and cut into the new hire presentation time.

3.117   On October 17th, 2018, at 8:05 AM, I sent David Knight a meeting invitation acceptance regarding to the New Hire Presentation slides. David Knight sent me an invitation at 7:44 AM to attend a meeting in the afternoon with management about the new hire presentation PowerPoint slides on October 17th, 2018. Karin Baldwin, Kary Peterson, David Knight, Vincent Peak, myself, and Krystal Snyder were all in attendance in the small Air Quality conference room.

3.117.1   During the meeting, David Knight instructed the new hires to set a limit of four slides each for the New Hire Presentation after I created approximately 11 slides.

3.117.2   I also explained to David Knight that I scheduled the new hire meetings and worked collaboratively with the group to create the slides. I believe David Knights' comments regarding "not working in the group" were made to undermine my performance and make it appear as if I didn't want to work

COMPLAINT - Page **35 of 70**

James Bullock
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

with others. Also, I believe that David Knight's request to shorten the new

hire presentation was intentionally made to weaken my ability to present

information and display my verbal communication skills to AQP leadership,

in addition to, prevent identified AQP training deficiencies from being

communicated to senior AQP management.

3.118   On October 17th, 2018, at 8:10 AM, Kary Peterson talked to Janice Batchelor about

the new hire presentation meeting. He said that Krystal Snyder is a "good hire" and a

"go getter." I believe this comment was made in retaliation for content I placed within

the new hire presentation slides that were sent to AQ management.

3.119   On October 18th, 2018, at 7:45 AM, David Knight comes over to my cubicle and says,

"the leadership team only comes here once per year." I believe this comment was

made in such a way to make it appear as though I didn't want to talk in front of the

AQ leadership. I believe AQ management was trying to build a case that I had a

verbal communication problem.

3.120   On October 18th, 2018, at 8:30 AM, Janice Batchelor informs me that Karin Baldwin

sent her the new hire presentation PowerPoint on October 17th, 2018. Karin Baldwin

did not communicate to me that she sent the presentation to Janice Batchelor. I

believe Karin Baldwin intentionally did not communicate information to me to create

a lack of inclusion and a hostile work environment for me.

3.121   On October 18th, 2018, Andrew Kruse comes into the office at 9:57 AM and says that

he encountered delays from his training trip in New Orleans. Andrew Kruse was

scheduled to give his presentation from 9:00 AM to 10:00 AM with Gail Wright.

David Knight did not discipline Andrew Kruse and moved his presentation to a later

timeslot after lunch which shortened the New Hire Presentation timeslot. The New

Hire Presentation was originally allotted 60 minutes according to David Knight's

COMPLAINT - Page **36 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

agenda. I believe David Knight shortened the New Hire Presentation to make my portion of the presentation shorter.

3.122   On October 18th, 2018, Krystal Snyder asked me to send her a copy of the leadership meeting agenda which David Knight previously sent out to the ERO group. I sent Krystal Snyder the meeting agenda via email at 10:42 AM. At 10:50 AM, Andrew Kruse asks me to send him an attachment of the same meeting agenda to him. I believe that the AQ management instructed or encouraged Andrew Kruse and Krystal Snyder to harass me to see if I would send them requested information since they had already received it from David Knights' previous email on October 8th, 2018.

3.123   On October 18th, 2018, in the large AQ conference room, myself, Krystal Snyder, Vincent Peak, and Andrew Kruse present the new hire presentation to the AQP leadership before the lunch break which was shortened by David Knight. Andrew Kruse gave his cattle feeder's presentation after the lunch break which was not shortened by David Knight.

3.124   On October 19th, 2018, at 8:27 AM, Kathy Taylor comes over to talk to Robert Koster and not me while I was at my cubicle. Robert Koster was also at his cubicle. I believe this event was used to create isolation and a hostile work environment for me. Kathy Taylor does not belong to the same protected class which I belong.

3.125   On October 19th, 2018, at 1:30 pm, I informed Karin Baldwin about the lack of enforcement of NESHAP regulations with auto body shops. This was a protected activity.

3.126   On October 22nd, 2018, at 7:15 AM, Kary Peterson brings up Mormons with me, Andrew Kruse, and Jenny Filipy. He says that he wanted to tell the Leadership team how much "ERO rocks." As he walks away, he told Andrew Kruse "Good talk." He also said to Andrew Kruse, "James told me to tell you that" after mentioning his

COMPLAINT - Page **37 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

presentation at the leadership meeting last week. On multiple occasions after I had the September 2018 discussion with Andrew Kruse, Kary Peterson came over and said, "Good Talk" to Andrew Kruse at his cubicle. Andrew Kruse sat directly across from my cubicle in the AQ department at ERO. I believe Kary Peterson made these comments out of retaliation, to create a hostile work environment for me, and to discriminate against me.

3.127   On October 22nd, 2018, at 11:00 AM, a meeting was held in Karin Baldwin's office. Myself, John Poffenroth, and Karin Baldwin were the attendees. I asked questions about the NESHAP requirements and why they aren't in the permit and inspection letters. I also asked about the enforcement of painter training and certification, VOC material requirements, and methylene chloride mitigation plans. John Poffenroth said that "Ecology doesn't look at that." This was a protected activity.

3.128   On October 23rd, 2018, at 1:00 PM, an inspector meeting was held. The attendees were myself, Karin Baldwin, John Poffenroth, and Gail Wright. I brought up the problem with the permit needing to be updated to reflect all specific NESHAP requirements. Karin Baldwin said during the meeting that we don't want to go out to do inspections to "ding" them. This was a protected activity.

3.129   On or around October 25th and 26th, 2018, I conducted inspections on four auto body shop facilities. Two were conducted with John Poffenroth per the request of Karin Baldwin.

3.130   On October 29th, 2018, I informed auto body facilities and management about the lack of compliance with federal regulations via email. Karin Baldwin was copied.

3.131   On October 29th, 2018, at 2:00 PM, I travel with Gail Wright to Phoenix, Arizona for EPA training from October 30th to November 1st, 2018.

COMPLAINT - Page **38 of 70**

3.132   On October 29th, 2018, David Knight sends an email to the group that he and Kary Peterson decided to end Vincent Peak's employment. Vincent Peak is linked to the same protected classes which I belong.

3.133   On October 31st, 2018, Karin Baldwin sent me an email at my personal email address instructing me to submit my timesheet.

3.134   On November 1st, 2018, Karin Baldwin sends me another email at my personal email address requesting me to make changes to my timesheet.

3.135   On November 5th, 2018, I attended Public Disclosure training at CRO in Union Gap, Washington. The training instructed employees to not use personal email addresses for State business. Karin Baldwin likely knew not to send emails to personal addresses due to working at Ecology for a significant period of time.

3.136   On November 6th and 7th, 2018, I attended EPA ICIS training at Seattle. Jason Cocke and Brian Prisock attended training on November 6th, 2018, but did not attend training on November 7th, 2018. Rhonda Snoddy and Jason Swift were both present representing the Environmental Protection Agency (EPA). Karin Baldwin previously encouraged me to carpool with Jason and Brian for the training. I don't believe that Jason or Brian were disciplined for not attending the second day of ICIS training.

3.137   I had difficulty gaining access to the EPA ICIS database where I couldn't gain access until the ICIS training in November 2018.

3.138   On November 12th, 2018, at 9:00 AM, In Karin Baldwin's office, Karin Baldwin said to me that her neighbors are "white trash" and store junk vehicles on their property. Karin also mentioned sending her an evaluation of her by the end of November. She told me that I can put it on her chair and it can be anonymous. Karin said that she told everyone to provide feedback. I did not send Karin Baldwin feedback due to fear of

COMPLAINT - Page **39 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

retaliation. Karin Baldwin also made a derogatory comment at Robert Koster's cubicle about Irish people, while Jenny Filipy was present.

3.139   On or around November 15th, 2018, I inspected two auto body facilities.

3.140   On November 16th, 2018, at 7:00 AM, Andrew Kruse says to Brian Prisock, "Is it time to go home yet?" I believe this comment was made to create a negative and hostile work environment for me.

3.141   On November 21st through the 27th, I submitted my initial draft reports for the six facilities that I inspected on or around October 25th, 26th, and November 15th, 2018, to Janice Batchelor and Karin Baldwin via email.

3.142   On November 26th, 2018, at 8:15 AM, Karin Baldwin and David Knight talk to Andrew Kruse about the Apple Cup game. They said that they were upset that the Cougars lost. Karin Baldwin made a comment and said that I was turning up my earphones. Robert Koster walks by and says, "Go Dawgs." I believe that Ecology employees were attempting to get me to say something negative about the Washington State Cougars football team.

3.143   On November 27th, 2018, at 1:47 PM, Karin Baldwin sent me an email requesting a quick check in with me. I replied that I could stop by tomorrow morning.

3.144   On November 28th, 2018, at 8:00 AM, Kary Peterson comes over to my cubicle and says to me and Andrew Kruse that we should all fly, rent a car, stay in a hotel, and head down to Frisco Texas for the Eastern game. I declined the offer. Andrew Kruse tells me "ata kid" in regards to me wearing Seahawk colors.  I believe this was an attempt by Kary Peterson to weaken the case of discrimination if I had accepted his invitation. Also, I believe that Andrew Kruse made his comment to disparage me.

3.145   On November 28th, 2018, at 8:50 AM, Kary Peterson says to Janice Batchelor, "Who says she'll make her probation period." Kary Peterson said that Krystal Snyder's

COMPLAINT - Page **40 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

probation period is in December. He also said that she keeps asking for stuff and he says no. Kary Peterson mentions documenting to Janice Batchelor and John Poffenroth. I believe that AQ management had discussed the extension of my probation with others in the department.

3.146   On November 28th, 2018, at 9:45 AM, I spoke to Janice Batchelor about Christmas break and the four reports for auto body shops which I submitted for review. I notified Janice Batchelor about pagination errors within an auto body shop report. After review, a missing page three of seven and four of seven were identified at the top of two pages. I believe Karin Baldwin or another employee maliciously deleted the page numbers to undermine my performance and create delays.

3.147   On November 28th, 2018, at 10:45 AM, Karin Baldwin calls a meeting with me in her office.

    3.147.1   Karin informed me that she was going to extend my probation period for non-disciplinary reasons and said it was to make sure I was comfortable.

    3.147.2   Karin Baldwin approved 40 Hour Hazwoper training and then blamed me for having a communication problem regarding to scheduling the 40 Hour Hazwoper training in December 2018 rather than in March 2019. Karin blamed me for incorrectly routing my travel form for the 40 Hour Hazwoper training. At that time, Janice Batchelor was out of office where I submitted the form to Kim Alexander.

    3.147.3   Karin informed me that I did not complete six inspections in time. I informed Karin Baldwin about our agreement in August and that Jason Cocke just recently completed his inspection on a facility in Kettle Falls.

COMPLAINT - Page **41 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.147.4  Karin Baldwin also told me that I didn't ask enough questions and that she wanted me to make formatting and verbiage changes within the reports after I followed previously approved report templates.

3.147.5  Karin Baldwin also instructed me to add more photos into the reports where most of the reports did not contain photos within them.

3.147.6  Karin Baldwin also instructed me to use templates created by Shawn Nolph from CRO and attached one of his templates with my draft report. Everyone in the department created their own templates for reports and check sheets.

3.147.7  Karin Baldwin handed me a hand copy of excessive changes to formatting and verbiage within my inspection report of an auto body shop facility. Karin Baldwin made handwritten comments which included making the change from "The AQP determined" to "I determined." This created liability concerns of making decisions out of the scope of my authority. The changes did not have a signature attached or linked with the document which posed ethical concerns.

3.148  On November 28th, 2018, at 1:36 PM, I sent an email to Karin Baldwin (copying Grant Pfeifer (ERO Regional Director) and David Knight) with attached meeting minutes from August 21st, 2018, containing the agreement for meeting my probation period requirements and minutes from the meeting in Karin's office on November 28th, 2018, at 10:45 AM. Within this email contained the following:

3.148.1  I disagreed with the decision to extend my probation,

3.148.2  I requested the specific rules used for making the determination to extend my probation,

COMPLAINT - Page **42 of 70**

3.148.3   I demanded for discrimination to stop immediately. If I was not being discriminated against, then I was willing to resolve the matter in a fair and collaborative way,

3.148.4   Also, I requested to file a grievance if I was being discriminated against in any form. I did not receive a written response. There was no action taken by management nor communicated to me,

3.148.5   There was discussion concerning my safety and taking 40 Hour Hazwoper training. Also, I was blamed for incorrectly routing the travel form. I gave the travel form to Kim Alexander due to Janice Batchelor being out of office,

3.148.6   Karin said that I did not perform the required number of inspections and I performed them late. However, the agreement we made contradicts her evaluation. Also, Jason Cocke performed inspections late,

3.148.7   Karin said that I didn't ask enough questions and I did not participate within the group which was not true,

3.148.8   I informed Karin Baldwin about violations of Ecology policies concerning discrimination and diversity during the meeting,

3.148.9   I requested SMART goals that are Specific, Measurable, Attainable, Realistic, and have timeline,

3.148.10   I requested that any important decisions related to my employment are put into writing to mitigate conflict,

3.148.11   Karin Baldwin requested that I add more photos and instructions within my reports after I used previously approved report templates of the same facilities,

COMPLAINT - Page **43 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.148.12  Karin Baldwin requested that I change my title to a Compliance Assurance Specialist within my reports which I completed.

3.149  On November 28th, 2018, at 1:53 PM, I sent Karin Baldwin an email with two attached reports for two auto body shops. David Knight and Grant Pfeifer were copied.

3.150  On November 29th, 2018, at 11:21 AM, Janice Batchelor sends an email to the AQ group. The email states, "Regardless if you are attending the off-site section meeting or not, please send Dave your answers to the following two questions. 1. What is a goal or activity you want to accomplish in 2019? 2. What would your life slogan be? I have set up this email so that all replies will go directly to Dave only. Replies are needed by 11a.m. on Monday, December 3rd." I replied back on November 29th, 2018 at 12:05 PM, "1. I would like to make it past my probationary period on 1/9/2019. I would also like to complete a department or agency project by the end of 2019. 2. I have many, but one is: "Do things better than they've ever been done before."" I believe the request by David Knight was sent in an attempt to discriminate against me and undermine my performance if I didn't respond within the specified timeline.

3.151  On November 29th, 2018, at 12:21 PM, David Knight sends an email to the group stating, "Please make sure you send me something that you would not be embarrassed for everyone to hear." I believe this comment was directed toward me in retaliation and to create a hostile work environment.

3.152  On November 29th, 2018, at 4:17 PM, I sent Karin Baldwin an email copying David Knight that I would like to know by sometime tomorrow if she's still going to request HR to extend my probationary period.

3.153  On November 30th, 2018, at 11:00 AM, I had a meeting with Karin Baldwin and David Knight in the small Air Quality conference room.

COMPLAINT - Page **44 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.153.1   David Knight told me that he passed my application on because I was process oriented.

3.153.2   David Knight also said that he wanted to extend my probation to make sure that I was comfortable and it was non-disciplinary.

3.153.3   David Knight said that he thought Karin Baldwin is objective and backed her 100%.

3.153.4   David Knight also said to me that I needed to improve my relationship with my supervisor, Karin Baldwin.

3.153.5   I asked Karin Baldwin and David Knight if they were discriminating against me. They answered, "no."

3.153.6   I explained to Karin Baldwin that I need to be given a fair opportunity to correct any perceived issues before I am given an evaluation and that didn't happen. This is also stated in the CBA.

3.153.7   I explained to Karin Baldwin and David Knight that I needed my boss to be my advocate and have my back. I explained to them that I expected correct information to be passed on to me as well. I also said that I'm still learning and understanding the standard for writing reports since they are still changing.

3.153.8   Karin told me that the main reason for extending my probation was due to a verbal communication issue. Karin also said that the reason for extending the probation was due to scheduling the 40 Hour Hazwoper training at the wrong time. David Knight refused to inquire with the entire group about Karin's perception of me having a verbal communication issue after I proposed this during the meeting. Karin Baldwin approved my request for

COMPLAINT - Page **45 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

1   40 Hour Hazwoper training through the Learning Management System

2   (LMS) before notifying me of having a communication issue.

3   3.153.9    Both David Knight and Karin Baldwin could not answer the question of

4   what rule(s) do they follow for extending probation periods.

5   3.153.10   David Knight and Karin Baldwin had to confer with legal counsel about

6   having inspectors making determinations within inspection reports. David

7   Knight gave me advice to use my own judgement.

8   3.153.11   David Knight said that the 40 Hour Hazwoper training was not important

9   and that going out into the field was important. I said that I wanted to be

10   safe when performing my job duties.

11   3.153.12   Karin Baldwin wanted me to talk to Robert Koster about permits.

12   3.153.13   Karin Baldwin said that I performed my inspections late. I mentioned that

13   this determination was not consistent with our previous agreement and that

14   Jason "Jake" Cocke just performed an inspection on a facility in Kettle

15   Falls, Washington.

16   3.153.14   David Knight said to me to stop trying to change the agency. He also said

17   to me that, "You don't have to be perfect."

18   3.153.15   No actions were communicated to me of a discrimination investigation.

19   3.154   CBA Article 5.1C states in relevant part:

20   **To recognize employee accomplishments and address performance issues in a**
21   **timely manner, discussions between the employee and the supervisor will occur**
    **throughout the evaluation period. Performance problems will be brought to the**
22   **attention of the employee to give the employee the opportunity to receive any**
    **needed additional training and/or to correct the problem before it is mentioned**
23   **in an evaluation. Such discussions will be documented in the supervisor's file.**

24   3.155   CBA Article 5.2B states in relevant part:

25   **The supervisor will discuss the evaluation with the employee. The employee will**
    **have the opportunity to provide feedback on the evaluation.**
26
COMPLAINT - Page **46 of 70**

27

28

1

2

3.156   On November 30th, 2018, at 1:00 PM, there was an inspector meeting. Myself, Karin

3         Baldwin, Gail Wright, Janice Batchelor, and John Poffenroth were in attendance.

4         3.156.1   Janice Batchelor was providing Microsoft Word Accessibility training.

5         3.156.2   David Knight interrupted the weekly inspector meeting held in the small

6                    conference room and asked Karin Baldwin if he could borrow me for a

7                    minute.

8         3.156.3   During the meeting with David Knight in his office, he asked me about the

9                    federal regulations within the permits. I explained change control processes

10                   and what needs to be changed within the General Order permit for auto body

11                   shops. David Knight told me that I could take his job.

12        3.156.4   During the inspector meeting, Karin Baldwin made a comment saying that

13                   she didn't think there was a problem with having the inspector make

14                   determinations within the reports since Kathy Taylor signs our employment

15                   documents. Karin Baldwin said that she would confer with legal counsel

16                   about inspectors making determinations within reports.

17        3.156.5   During the meeting, Janice Batchelor said to me that my report templates for

18                   the auto body shops were good and they want to use them.

19        3.156.6   Karin Baldwin asked me to help her configure the reading statistics in

20                   Microsoft Word. The instructions I gave to Karin worked.

21  3.157   In December of 2018, I received a Jury Summons in the mail from Spokane County

22        Superior Court to participate in Jury Duty from February to March 1st, 2019. I

23        contacted Karin Baldwin and notified her that I was going to reschedule jury duty.

24        Karin Baldwin sent me an email with comments about our conversation in her office

25

26  COMPLAINT - Page **47 of 70**

27

28

1     stating that I was going to cancel Jury Duty which was not correct. It is illegal to

2     discriminate against an employee for participating in jury duty.

3     3.158   While I was attending 40 Hour Hazwoper training at Ecology Headquarters in Lacey,

4        Washington from December 3rd, 2018, to December 7th, 2018, Karin Baldwin sent out

5        an email to her staff about following procedures for checking in and out of office and

6        leaving out of office messages on Outlook and voicemail when not in the office.

7        Andrew Kruse was telecommuting on December 12th, 2018, where he did not leave a

8        phone number or cell number as instructed in Karin Baldwin's email sent on

9        December 3rd, 2018. Karin Baldwin had sent out other emails with important

10       information and instructions while I was traveling for training. I believe these emails

11       were retaliatory and an attempt to undermine my performance. I don't believe that

12       Andrew Kruse was negatively criticized for not following procedures.

13    3.159   On or around December 2018, I received a canceled meeting notification from Karin

14       Baldwin where my name was put last on the list. The meeting was scheduled for

15       December 3rd, 2018. I believe this was malicious and discriminatory given the pattern

16       of behavior exhibited.

17    3.160   On December 4th, 2018, at 4:30 PM, I made a complaint of discrimination to Kathy

18       Taylor in her office at Lacey, Washington Ecology Headquarters. Kathy Taylor gave

19       me advice to schedule time to have conversations with the group at ERO. I believe

20       Kathy Taylor was contributing to the discrimination by not taking appropriate action

21       to resolve the matter and encouraging actions which would contribute to creating

22       delays of my work. There was no action or discipline communicated to me after this

23       conversation where the discrimination and harassment continued.

24    3.161   On December 5th, 2018, Jason Cocke sent out an email displaying a written

25       communication issue. Jason "Jake" Cocke and Brian Prisock also attended ICIS

26    COMPLAINT - Page **48 of 70**

27

28
**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

training with me in November 2018. Both Jason Cocke and Brian Prisock left ICIS training early in Seattle. Gail Wright also said that Jason left training early when she went with Jason to Nevada. Jason Cocke also announced in the office that he passed his incinerator training but failed the air quality section. Both Jason Cocke and Brian Prisock missed numerous days of work where I didn't miss any. Jason Cocke or Brian Prisock were not disciplined, negatively criticized, or terminated as I was. Both Jason Cocke and Brian Prisock do not belong to the same protected classes which I belong.

3.162   On December 5th, 2018, Karin Baldwin sends me an email requesting me to fill out trainings that I would like to take after January 9th, 2019. I sent Karin Baldwin back the training list on or around December 2018 or January 2019. Some of the trainings I sent to Karin Baldwin were Ethics Bowl training, SharePoint training, ASQ Lean Six Sigma Conference and training in Arizona, and Investigator training in Sacramento, California, in February 2019. I believe Krystal Snyder was granted the same investigator training in Sacramento, California which I requested previously, but was denied by Karin Baldwin. This is disparate treatment by AQ management.

3.163   On December 10th, 2018, at 10:06 AM, I sent an email to the group (Gail Wright, Jason Cocke, John Poffenroth, and Karin Baldwin) regarding to traveling to Portland for the Investigator training. There was no reply out of office message from Jason Cocke. This was after Karin Baldwin instructed everyone to leave a reply message when out of office in her December 3rd email.

3.164   On December 10th, 2018, at 10:44 AM, Karin Baldwin sends me an email stating to remember that the rental car is intended for business and only Ecology employees are permitted to ride or use the vehicles. This email was not sent out to the group which is disparate treatment.

COMPLAINT - Page **49 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.165   On December 11th, 2018, at 8:00 AM, I attended and completed the Defensive Driving training at ERO. Krystal Snyder was also in attendance.

3.166   On December 11th, 2018, at 11:45 AM, David Knight asks me what car insurance I had after taking the Defensive Driving training. Based on previous behavior, I believe David Knight asked me if I had insurance to find a reason to end my employment.

3.167   On December 11th, 2018, at 12:16 PM, I sent Karin Baldwin an email informing her that I placed my travel form for the 40 Hour Hazwoper training in her inbox. Karin Baldwin replied stating that she would take a look and pass it on to David Knight. The travel form was still in her inbox unsigned as of December 18th, 2018.

3.168   On December 11th, 2018, at 3:30 PM, David Knight comes over and talks to Andrew Kruse about Patrick Mahomes the quarterback for the Kansas City Chiefs. Andrew Kruse says that Patrick Mahomes looks like a "kid." Then Andrew Kruse says that they all look like "kids." Due to the pattern of behavior, I believe this was another derogatory act toward those belonging to the same protected class which I belong.

3.169   On December 11th, 2018, I attended an offsite union meeting and was invited to be part of the local 1221 Executive Board. Ecology employee and Union Steward Llyn Doremus was also present at the meeting. I first notified Llyn Doremus of the extension of my probation and discrimination after the union meeting. Llyn Doremus said to me that "there are ways of getting around that." Llyn Doremus does not belong to the same protected classes which I belong.

3.170   On December 12th, 2018, I have a meeting with Llyn Doremus in the small water quality meeting room on the first floor at ERO.

    3.170.1   Llyn Doremus told me that she doesn't think that Karin Baldwin is a racist because she adopts two black kids.

COMPLAINT - Page **50 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.170.2   She also told me that "if the Governor knew about what was going on in the agency, that he would shut it down."

3.170.3   Llyn Doremus also told me that she knew Karin Baldwin and David Knight well and they would fire me if I filed a grievance.

3.170.4   Llyn Doremus is a trained union Steward and I relied on her advice. I did not file a grievance. I believe that Llyn Doremus' actions were intentional and contributed to discrimination against me.

3.171   Within EEOC law 42 U.S.C § 703 et. seq. it states in relevant part:

**(c) Labor organization practices**
**It shall be an unlawful employment practice for a labor organization-**
**(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;**
**(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or**
**(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.**

3.172   On December 13th, 2018, at 10:00 AM, Karin Baldwin requests that I give her a list of four facilities that are in operation in January and February. I sent Karin Baldwin an email containing the minutes at 12:55 PM. I did not agree to the additional requests. I believe this request was made in retaliation for making a complaint about her to Kathy Taylor, making a complaint to a union steward, participating in union activities, to interfere with meeting my probationary requirements, and other protected classes or actions.

3.173   On December 13th, 2018, at 1:00 PM, During an inspector meeting with Gail Wright, Jason Cocke, and Karin Baldwin, I displayed a risk assessment matrix for prioritizing

COMPLAINT - Page **51 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

1   inspections. I asked a question about the storage of videos in the PIMS database.

2   Karin Baldwin advised me to ask the Central Records staff.

3.174   On December 14th, 2018, at 4:55 PM, Karin Baldwin sent me an email with

corrections made to my minutes sent on December 13th, 2018, at 12:55 PM. Karin

Baldwin changed the due date of sending four facilities to her from January 7th, 2019

to January 4th, 2019. Karin Baldwin increased standards of meeting my probationary

requirements to cause tortious interference.

3.175   On December 18th, 2018, an inspection report of one auto body shop was approved

and sent out into the mail.

3.176   On December 18th, 2018, I inquired to Janice Batchelor about the travel form for the

Advanced Investigator training course at DES in Olympia on January 7th, 2019.

Janice said that she never received it. I looked inside Karin Baldwin's inbox and the

travel form was still in her inbox unsigned. This was after I sent Karin Baldwin an

email informing her that the travel form was placed in her inbox. I believe that Karin

Baldwin intentionally left the travel form in her inbox to retaliate for requesting 40

Hour Hazwoper training, create delays of my training, to undermine my performance,

and interfere with obtaining my probationary requirements.

3.177   On December 18th, 2018, at 2:01 PM, Jason Cocke was not present at the all staff

section meeting held in the large AQ conference room.

3.178   On December 19th, 2018, Karin Baldwin delays approval of my auto body reports and

submits questions about the Operation and Maintenance manual and methylene

chloride requirements for auto body shops. Karin Baldwin continued to make

numerous changes to my reports. All of my reports were submitted to her for review

by November 28th, 2018. I believe Karin Baldwin made numerous changes to cause

delayed approval of my reports in order to undermine my performance, retaliate for

COMPLAINT - Page **52 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

inquiring about the enforcement of federal regulations, give me a negative performance evaluation, and interfere with me meeting my probationary period requirements.

3.179   On December 20th, 2018, David Knight asks Neil Hodgson where he's going. Neil says Colville. Jason Cocke and Andrew Kruse also went to Colville earlier in the day and did not carpool with Neil.

3.180   On December 21st, 2018, at 8:30 AM, Karin Baldwin was talking to Andrew Kruse about Andrew knowing a relative that works for the Department of Social Health Services (DSHS).

3.181   On December 21st, 2018, at 9:27 AM, Karin Baldwin sent me an email stating that she put together agenda for our 1 on 1 sessions and that we'll be going over the probation extension documents.

3.182   On December 21st, 2018, at 10:00 AM, I have a meeting with Karin Baldwin in her office.

    3.182.1   I receive a negative performance review by Karin Baldwin and Stuart Clark.

    3.182.2   Karin Baldwin gives me an unsigned performance improvement plan delivered to me by hand.

    3.182.3   Karin Baldwin hand delivers a letter to me dated on December 20th, 2018, by Stuart Clark. The letter stated that I only completed one inspection of only one type of facility, to date. It also stated that my probation was being extended based on reasons related to my performance (disciplinary reasons).

    3.182.4   I disagreed with the evaluation by both Karin Baldwin and Stuart Clark and requested a complete and objective review of my performance.

3.183   On December 28th, 2018, four reports were approved and sent into the mail. I sent Karin Baldwin an email providing completion of six facilities (one gasoline terminal

COMPLAINT - Page **53 of 70**

on September 26th, 2018, one auto body shop on December 18th, 2018 and four auto body shops on December 28th, 2018). One auto body shop which I performed an independent file review, site visit, and documentation of, which I could not gain access to, was not approved but the report was submitted. It took less than 10 calendar days to approve the first report in September 2018. It took over 30 days to approve five auto body reports that were submitted by November 28th, 2018. These reports were also created from a template that I used from a report that was approved on December 18th, 2018 for an auto body shop. Karin Baldwin and the AQP management intentionally delayed approving my reports to undermine my performance, give me a negative performance evaluation, and interfere with me meeting my probationary requirements. I was not given credit for creating report templates of the same type of facility, completing seven reports on time, including higher quality within the reports, and completing an independent file review, site visit, and documentation on a facility that was closed. I believe that these actions taken by AQ management were out of malice intent and linked to retaliation, discrimination, and tortious interference.

3.184   There was no written definition of a completed inspection within the AQP's processes, procedures, or manuals. The only existing written guidance, to complete an inspection report, was a timeline of 30 days provided within the Air Quality Investigator Manual (page 109, line 3.6.5). The manual did not provide a specific definition of a complete inspection.  The AQ management exploited deficient processes and procedures to discriminate by making varied changes, creating delays, and targeting me due to protected classes which I belong and the protected actions I took. The AQ management subjected me to higher standards than others and did not consistently apply those standards within the entire department.

COMPLAINT - Page **54 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.185   On December 29th, 2018, I rescheduled jury duty for April 2019 and notified Karin Baldwin shortly after.

3.186   On January 2nd, 2019, at 11:34 AM, I sent a list of eight facilities, potentially in operation in January and February 2019, to John Poffenroth. John Poffenroth sent a reply back on January 2nd, 2019, at 12:17 PM copying Karin Baldwin, Gail Wright, and himself.

3.187   On January 3rd, 2019, I attended Asbestos training at ERO. Karin Baldwin and Andrew Kruse were in attendance. The instructor told the class that auto body shops contain asbestos. I also helped an Ecology employee from CRO since they arrived late to the training. Andrew Kruse made a negative comment about the instructor after the class and attempted to get me to say something negative about the instructor.

3.188   On January 3rd, 2019, at 7:30 AM, Karin Baldwin sent me meeting minutes of the one on one meeting on January 2nd, 2019.

3.189   On January 3rd, 2019, I have a meeting with Llyn Doremus in the small Air Quality meeting room. Llyn Doremus suggested that I write Karin Baldwin a letter and copy Stuart Clark. Llyn Doremus also suggested that I complete the additional requirements to meet my extended probation. I believe that Llyn Doremus wanted me to complete the additional probation requirements and did not file a grievance due to contributing to the discrimination against me.

3.190   On January 3rd, 2019, at 1:00 PM, an inspector meeting was held in the small air quality conference room. The attendees were Gail Wright, John Poffenroth, Karin Baldwin, and myself.

    3.190.1   Karin Baldwin announced that there is a requirement of the program to index and interpret all of its policy statements.

COMPLAINT - Page **55 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.190.2   Karin Baldwin mentioned that there was a request to know when a law or rule applies to a facility.

3.190.3   Karin Baldwin mentioned policy statements, the current approach used of a law or rule, and what the facility needs to do to be in compliance. It was mentioned that the guidance documents help businesses to comply.

3.190.4   I mentioned that having a consistent system such as a risk matrix to prioritize inspections would be an important tool in evaluating facility compliance.

3.190.5   Karin Baldwin said she would order respirators for conducting auto body shop inspections after I mentioned possible exposure to asbestos in auto body shops.

3.190.6   The topic of the definition for completing an inspection was mentioned. John Poffenroth mentioned that the timeline is a flexible number which is a case by case basis. Karin Baldwin mentioned that the letter should be sent out in two weeks.

3.190.7   Karin Baldwin admitted that a process was needed for organizing and filing documents after I made the recommendation. John Poffenroth confirmed that it was hard to find information on some of the facilities due to the information being in different locations.

3.191   Under OSHA federal regulations, 15 U.S.C. §2651 (a) states in relevant part:

**(a) PUBLIC PROTECTION. No State or local educational agency may discriminate against a person in any way, including firing a person who is an employee, because the person provided information relating to a potential violation of this title to any other person, including a State or the Federal Government.**

COMPLAINT - Page **56 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.192   On January 3rd, 2019, at 2:30 PM, Andrew Kruse mentions Jubilant HollisterStier again in a conversation with me about football. I believe the negative pattern of behavior and repeated comments were made consistent with creating a hostile environment, mental anguish or emotional distress, and causing tortious interference in preventing me from obtaining my probationary requirements.

3.193   On January 4th, 2019, at 8:09 AM, I sent Karin Baldwin an email (copying Stuart Clark) with an attached letter and proof of six completed inspections to support the request of a complete performance review. Karin Baldwin acknowledged verbally, that I met the requirements for completing inspections.

3.194   On January 8th, 2019 Andrew Kruse makes a comment about Ecology being a better place to work than where he used to work. He mentioned toxic behavior at ALK Abello. He also mentioned PAML and Jubilant HollisterStier LLC. I believe that this pattern of behavior was made intentional to create a hostile work environment, emotional distress, and cause tortious interference.

3.195   On January 9th, 2019, at 7:30 AM, John Poffenroth comes over to my cubicle and says to me, "We need to find out a way to get you to talk."

3.196   On January 9th, 2019, during an AQ section meeting, Jase Brooks correctly identifies everyone's position at the meeting except for mine. Jase Brooks asks me if I was an engineer or permit writer. He says to me in front of the group that every time he tried to come over to talk to me during the environmental negotiations training in Lacey, I got up and walked out. This was not true. In the December meeting with Kathy Taylor in her office, I communicated to her that I had engineering experience and interests in learning permit writing in addition to conducting inspections. Kathy Taylor was the only one I communicated this information to. I believe this event was

COMPLAINT - Page **57 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

meant to harass and discriminate against me. Others not in my protected classes were not treated the same way I was which is disparate treatment.

3.197   On January 10th, 2019, at 11:20 AM, I asked Jenny Filipy verbally if a facility had to fill out a Notice of Construction to change elements in a permit.

3.198   On January 10th, 2019, at 12:00 PM, I attended a union meeting at the ERO Ecology lunch room. Llyn Doremus informed employees that I "stepped up." The local 1221 union president Joseph Hancock, Alex Bergh, Chris Madunich, Janice Batchelor, Kim Alexander, and John Blunt were present as well as others. Joseph Hancock told union employees during this meeting that he wanted to discourage employees from filing grievances against management. I believe that Ecology management influenced members of the local 1221 to discourage union members to file grievances. I relied on Ecology policies, union rules, and the advice of experienced union representatives where nothing changed to stop the continued discrimination by the AQ management at Ecology.

3.199   Joseph Hancock told union members that he wasn't receiving pay for performing local union president duties.

3.200   Joseph Hancock also made comments on several occasions about "picking a fight" with the west side union leadership to get them to support the local 1221.

3.201   On January 10th, 2019, at 3:40 PM, I sent an email with an attached rebuttal to Dallas McKay of Human Resources. Within the rebuttal was a list of my accomplishments, completed trainings, concerns of discrimination and retaliation, and concerns of violations of Federal, State, Union, and agency rules. The rebuttal included concerns of rule violations of Title VII Civil Rights Act of 1964 as amended, RCW 49.60. et. seq., RCW 42.40. et. seq., RCW 2.36.165 et. seq., tortious interference, CBA rule violations, and violations of Ecology policies. I received no communication from

COMPLAINT - Page **58 of 70**

James Bullock
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

Ecology Human Resources or management in regards to conducting an investigation or its outcome concerning the violation of rules. I was fired shortly after submitting my rebuttal to Human Resources which is my right under Washington State Law (RCW 49.12.250 (2)) and Union rules (CBA Articles 5.2C and 31.3). Ecology management retaliated and illegally discharged my employment absent just cause due to any or all information contained within the rebuttal.

3.202   Under Title VII Civil Rights Act of 1964, as amended, it is against the law to discriminate based on race, religion, color, sex, and retaliation.

3.203   Under Washington State Law, it is illegal to retaliate for reporting public violations such as whistleblowing or being perceived as a whistleblower according to RCW 42.40 et. seq.

3.204   The Washington State Clean Air Act under RCW 70.94 is a public policy serving to protect the public interests of its citizens. Any retaliation or employee discharge relevant to the inquiry of the enforcement of regulations or laws would jeopardize public interest.

3.205   RCW 49.60, The Washington State Law against Discrimination, prohibits discrimination based on race, color, creed, religion, sex, etc.

3.206   The tortious interference and discrimination experienced was for an improper purpose, was not permitted by law, resulted in illegal discharge, and caused damages.

3.207   Under OSHA and the Clean Air Act (CAA) 42 U.S.C. § 7622 et. seq., employees are protected for executing their rights under this act. This includes making inquiries concerning employee health and safety.

3.208   According to the CBA Supplemental Agency Agreements section, page S-13, the Department of Ecology reviewed all positions that perform inspections involving hazardous substances or hazardous waste sites and OSHA Hazwoper certification to

COMPLAINT - Page **59 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

better understand risks associated with performing their work. As of my hire date,

Ecology did not make 40 Hour Hazwoper training a requirement for positions

performing inspections. The training was categorized as recommended. This placed

inspectors at risk of safety and health related injuries.  I made a complaint to Karin

Baldwin about taking 40 Hour Hazwoper training before conducting inspections.

3.209   Due to being a Union member, the CBA rules have jurisdiction over the Washington

Administrative Code (WAC) provisions, however, due to being misled and the

Union's neglect to file a grievance, I filed a complaint under WAC provisions.

3.210   Under CBA Article 2, Non-Discrimination, it is stated in relevant part:

**Under this Agreement, neither party will discriminate against employees on the basis of religion, age, sex, status as a breastfeeding mother, marital status, race, color, creed, national origin, political affiliation, military status, status as an honorable discharged veteran, disabled veteran or Vietnam era veteran, sexual orientation, gender expression, gender identity, any real or perceived sensory, mental or physical disability, genetic information, or because of the participation or lack of participation in union activities. Bona fide occupational qualifications based on the above traits do not violate this Section.**

Also, CBA Article 2.2 states in relevant part:

**"Both parties agree that unlawful harassment will not be tolerated."**

3.211   Ecology management exploited CBA Article 4.6 A and did not base a probation

extension on valid performance related issues. Relevant to CBA Article 5.1 (C), there

were no valid performance problems raised justifying the need to receive training or

correct any perceived problems before an evaluation was given. The previous

negative criticisms given by Karin Baldwin were not supported by valid and objective

facts, but rather subjective perceptions, and came after I informed management about

concerns of rules being violated. Karin Baldwin perceived me of having a verbal

communication problem with her; however, I was not informed previously by her or

others as having a verbal or written communication problem. Ecology management

COMPLAINT - Page **60 of 70**

used subjective standards to discriminate. Additionally, Jason Cocke displayed numerous performance issues that were blatant and likely was not criticized as harshly as I was. Also, I proposed to David Knight to inquire within the group about me having a verbal communication problem. My proposal was not accepted and the AQ management neglected to collaborate with me reasonably to resolve the matter fairly.

3.212   CBA Article 4.4 states in relevant part:

**An employee will attain permanent status in a job classification upon his or her successful completion of a probationary, trial service or transition review period.**

3.213   Given that Ecology management based their evaluation on invalid information and reasoning, my original probation period of six months should have been upheld according to following relevant rules in good faith. Therefore, as of January 9th, 2019, I was a permanent status employee and could only be terminated for just cause. I was discharged after January 9th, 2019 for illegal reasons.

3.214   CBA Article 27.1 states in relevant part:

**"The employer will not discipline any permanent employee without just cause."**

3.215   CBA Article 27.2 defines discipline as oral or written reprimands, reductions in pay, suspensions, demotions, and discharges. Ecology AQ management first informed me verbally and described the reason for the extension of my probation on November 28th, 2018, as non-disciplinary. According to Article 27 of the CBA, the oral reprimand given by Karin Baldwin was for a disciplinary reason. Also, Article 29.3 requires that a grievance be filed within 28 days. The short timeline to file a grievance was taken advantage of and used to discriminate. Ecology management changed their reason for extending my probation from non-disciplinary to disciplinary. I believe AQ

COMPLAINT - Page **61 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

management intentionally did this to create confusion so I would accept the probation extension and to miss filing a grievance timely. Also, after I notified Ecology management about filing a grievance and inquired about being discriminated against, Ecology management did not provide a written response and replied verbally that they were not discriminating against me. I believe Ecology management intentionally lied, used deception and intimidation, and exploited deficient rules such as Ecology policies of having short grievance filing timelines, resolving employee matters without making formal complaints, deficiencies in Union rules, and deficiencies in other applicable rules to prevent me from filing formal complaints and grievances. The pattern of behavior exhibited by AQ management did not support non-discrimination.

3.216   Under CBA Article 20 (A), the employer will provide a work environment in accordance with safety standards established by the WISHA. CBA Article 20.2 states in relevant part:

**"The employer will provide employees with orientation and/or training to perform their jobs safely."**

The 40 Hour Hazwoper training was not a required training and the AQ management did not encourage this training. However, 40 Hour Hazwoper training had been identified in meetings as highly recommended and essential for preparing inspectors against health and safety hazards. The 40 Hour Hazwoper training was a recommended training at Ecology.

3.217   No whistleblower complaint was filed due to being advised not to file a formal grievance, being unable to file a complaint due to receiving discipline, and following the Ecology policy to resolve matters amongst employees. However, due to informing Ecology management of employee safety/health concerns and rule violations, the

COMPLAINT - Page **62 of 70**

management likely perceived these actions as being whistleblower related and took

adverse action in retaliation. Ecology management exploited applicable rules to

discriminate against me after informing them of possible rule violations which

includes but isn't limited to violations of public policies.

3.218   CBA Article 47.2 states in relevant part:

**"Inappropriate workplace behavior by employees, supervisors, and/or managers will not be tolerated."**

I notified a Union representative and management multiple times about inappropriate

behavior and I did not receive information about its outcome or any action taken.

3.219   On or around January 10th of 11th, 2019, Dallas McKay sent me an email asking if I

sent the rebuttal to Karin Baldwin. I sent Dallas McKay a reply back stating that I had

contacted and spoke to Karin Baldwin about the contents within the rebuttal but did

not send her the rebuttal. I also mentioned that if there is a process or procedure

relevant to this situation, then I will follow it. I received no response from Dallas

McKay. My intention for sending the rebuttal to Human Resources (HR) was to see if

HR had processes or procedures to mitigate conflict and discrimination between

employees and management. Also, I was instructed by Stuart Clark that I could

contact either Karin Baldwin or Dallas McKay about my employment in the letter

dated December 20th, 2018. Additionally, within the Ecology sexual harassment

policy, one of the steps in the procedure is to contact Human Resources. I did not

receive any alternative instruction, where I followed an existing procedure within a

current Ecology policy. I believe that Human Resources sent the rebuttal directly to

management and did not attempt to intervene and mitigate the matter. I was out of

office on Friday, January 11th, 2019.

COMPLAINT - Page **63 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

3.220   On January 14th, 2019, at 7:30 AM, Karin Baldwin asked me to join her and David Knight in David Knight's office. David Knight said that they are looking to bring in a senior inspector. David Knight told me that they aren't looking for a process engineer. Karin Baldwin handed me a letter dated January 14th, 2019 written by Kathy Taylor stating that this is a probation separation and David Knight and Karin Baldwin terminated my employment. I was not given an opportunity to have a union representative present during meetings or a chance to state my case to management after requesting it. After providing evidence and a request to conduct a complete and objective review to the AQ management, I did not receive a fair and objective evaluation. I believe Ecology management terminated my employment based on the information pled herein concerning violations of Federal, State, Union, and Policy rules.

3.221   During my unemployed period from January 2019 to August 2019, I received a SEAP (Self Employment Assistance Program) letter from the Washington State Employment Security Department. I applied for the SEAP program and was later denied acceptance into the SEAP program. Subsequently, I filed an appeal and won my appeal against the Employment Security Department.

3.222   From August 2019 to October 2019, I worked as a Laboratory Assistant at Providence Sacred Heart Medical Center in Spokane, Washington. I was terminated from employment on October 24th, 2019 which is likely a result of tortious interference from previous employers and continuous employment discrimination. The Washington State Department of Ecology was listed on my resume when I applied to Providence.

### IV.   WASHINGTON STATE LAW CAUSES OF ACTION:

COMPLAINT - Page **64 of 70**

James Bullock
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

**CAUSE OF ACTION FOR VIOLATIONS OF THE WASHINGTON LAW AGAINST DISCRIMINATION: RCW 49.60, et seq.**

I re-allege all of the above as though fully set forth herein.

4.1     Violation of The Washington Law Against Discrimination, hereafter "WLAD" pursuant to RCW 49.60.030, 49.60.180, 49.60.208, 49.60.210, and 49.60.400.

4.2     The Washington State Department of Ecology is an employer subject to the requirements of RCW 49.60.

4.3     The Washington State Department of Ecology employs more than eight employees.

4.4     As a direct result of such discrimination, I suffered damage, including but not limited to a) past and future economic loss; b) emotional distress / mental anguish; c) prejudgment interest; e) punitive damages; and f) costs of fees.

**RETALIATION/WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**
I re-allege all of the above as through fully set forth herein.

4.5     Retaliation and discharge of employees who report violations of federal and state laws or question such acts is prohibited by clear state and federal public policy;

4.6     Discouraging the conduct in which I engaged in would jeopardize those public policies;

4.7     My public policy linked conduct caused Ecology's retaliation against me and ultimately my discharge;

4.8     Washington State's anti-retaliation statute relative to government employees identifies acts used here by Ecology against myself which constitute the retaliation here as a matter of public policy. Under RCW 42.40.020 (10)(ii), a whistleblower is defined as the employer's perception of the employee reporting, whether an employee did or not.

COMPLAINT - Page **65 of 70**

4.9     No overriding justification existed for my dismissal.

4.10    Ecology's conduct contravened the letter of purpose of a constitutional, statutory, or

        regulatory provision or scheme, including the following:

        4.10.1  Violation of the Washington Law Against Discrimination RCW 49.60 et. seq.

        4.10.2  Violation of public interest as stated within RCW 70.94 et. seq.

        4.10.3  Violation of General Order of Approval for Automobile and Repair Shops

                (08-AQG-001) and The Clean Air Act.

4.11    As a direct and proximate result of Ecology's retaliation in violation of RCW 42.40

        et. seq., I have suffered harm, including, without limitation: a) past and future

        economic loss; b) emotional distress; c) prejudgment interest; d) punitive damages;

        and e) cost of fees and all other statutory relief and relief necessary to make me

        whole.

CAUSE OF ACTION FOR VIOLATIONS OF Tortious interference or conduct. RCW 4.92.090,

4.12    RCW 4.92.090 states in relevant part:
        **The state of Washington, whether acting in its governmental or proprietary**
        **capacity, shall be liable for damages arising out of its tortious conduct to the**
        **same extent as if it were a private person or corporation.**

4.13    Tortious Interference

        4.13.1  There was existence of a valid contractual employment relationship;

        4.13.2  Employees at the Washington State Department of Ecology and other former

                employers had knowledge of that relationship or potential relationship;

        4.13.3  There was intentional interference inducing or causing a breach or termination

                of the relationship or expectancy;

        4.13.4  Defendants interfered for an improper purpose or used improper means; and

        4.13.5  The result caused damage.

CAUSE OF ACTION FOR VIOLATIONS OF RCW 2.36.165 et. seq.

COMPLAINT - Page **66 of 70**

4.14    RCW 2.36.165 states in relevant part:

> **An employer shall provide an employee with a sufficient leave of absence from employment to serve as a juror when that employee is summoned pursuant to chapter 2.36 RCW.**
> **An employer shall not deprive an employee of employment or threaten, coerce, or harass an employee, or deny an employee promotional opportunities because the employee receives a summons, responds to the summons, serves as a juror, or attends court for prospective jury service.**
> **An employer who intentionally violates subsection (1) or (2) of this section shall be guilty of a misdemeanor.**
> **If an employer commits an act in violation of subsection (2) of this section the employee may bring a civil action for damages as a result of the violation and for an order requiring the reinstatement of the employee. If the employee prevails, the employee shall be allowed a reasonable attorney's fee as determined by the court.**
> **Employer means any person, association, partnership, or private or public corporation who employs or exercises control over wages, hours, or working conditions of one or more employees.**

WSFE Union Collective Bargaining Agreement (CBA)

4.15    Violation of WFSE CBA Articles: 2, 4, 5, 8, 20, 27, 29, 36, 47, and any other relevant rules.


## V.    FEDERAL CAUSES OF ACTION:

**CAUSE OF ACTION FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED et. seq.**

I re-allege all of the above as though fully set forth herein.

5.1    Title VII of the Civil Rights Act of 1964, as amended, prohibits employment discrimination based on race, color, religion, sex, national origin, and retaliation (42 U.S.C. 2000).

THE WEINGARTEN RULE

5.2    **NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975)**

COMPLAINT - Page **67 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

**Held: The employer violated § 8(a) (1) of the National Labor Relations Act because it interfered with, restrained, and coerced the individual right of an employee, protected by § 7, "to engage in . . . concerted activities for . . . mutual aid or protection . . . ," when it denied the employee's request for the presence of her union representative at the investigatory interview that the employee reasonably believed would result in disciplinary action. Pp. 420 U. S. 256-268.**

5.3   I was denied the request to have a union representative present during a January 14th, 2019 meeting with Karin Baldwin and David Knight where I was unlawfully terminated. This is violation of 29 U.S.C. § 151-169.

5.4   Violation of the Clean Air Act 42 U.S.C. § 7401 et seq.

5.5   Violation of 42 U.S.C. § 7622.

5.6   Violation of 40 CFR part 63 subpart HHHHHH, the National Emission Standards for Hazardous Air Pollutants (NESHAP 6H).

    5.6.1   40 CFR part 63.11173 (a) and (1).

5.7   Violation of the OSH Act (29 U.S.C. § 660).

5.8   Violation of 28 U.S.C. § 1875, jury service discrimination.

## VI.   Exhaustion of Federal Administrative Remedies

6.1   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on June 24th, 2019.

6.2   The Equal Opportunity Commission issued a Notice of Right to Sue letter, which I received on November 20th, 2018. (Copy of right to sue letter is attached).

## VII.   RELIEF REQUESTED

7.1   I re-allege all of the above.

COMPLAINT - Page **68 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

7.2    Based on the foregoing allegations, I respectfully ask the Court to award me the following relief:

    7.2.1    Money judgment in an amount necessary to compensate me for my actual damages, including back pay, front pay, and prejudgment interest thereon, future economic loss and compensation for emotional distress and mental anguish, for all causes of action above named;

    7.2.2    Relief from a statute of limitations bar for the right to sue former employers and its current or former agents (managers, supervisors, etc.) based on continuing discrimination and tortious interference.

AND IN ADDITION to money damages, other damages as suited by the court.

**FEDERAL LAW:**

    7.2.3    For judgment against defendant The Washington State Department of Ecology for all damages as allowed by federal law for violations of Title VII of the Civil Rights Act of 1964 as amended, OSH Act, the Clean Air Act, the National Labor Relations Act (29 U.S.C. 151-169), jury service discrimination, public policies, and other laws.

    7.2.4    All damages including but not limited to punitive damages pursuant to undermining public policies and individual rights.

**WASHINGTON LAW:**

    7.2.5    All relief provided by RCW 49.60, et. Seq., 70.94 et. Seq., RCW 42.40 et. seq., damages for public policy violation; and taxable costs.

**GENERALLY:** Any and all other statutory and equitable relief as is available, and any the Court deems appropriate, including taxable costs on any judgments available as a matter of law.

COMPLAINT - Page **69 of 70**

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359

## VIII.   Certification and Closing

8.1   Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a  non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

8.2   I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:                    2/12/2020

Signature of Plaintiff

Printed Name of Plaintiff        James Bullock

**James Bullock**
811 W. 15th Ave. Apt. A
Spokane, WA 99203
Phone: 509-280-2359